**Nancy DINOTE, Plaintiff,**

v.

**UNITED OF OMAHA LIFE INSURANCE COMPANY, Defendant.**

**No. Civ.A. 03–06474.**

United States District Court, E.D. Pennsylvania.

July 29, 2004.

Bernard M. Berman, Berman, Asbel & Berman, L.L.P., Media, PA, for Plaintiff.

Michael N. Onufrak, Nicole Clarissa Whittington, White & Williams LLP, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the Motion for Summary Judgment of Defendant United of Omaha Life Insurance Company ("Defendant"). Plaintiff Nancy Dinote ("Plaintiff") brings a claim alleging that Defendant's denial of her claim for long-term disability ("LTD") insurance benefits was in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* In its motion for summary judgment on the claim, Defendant contends that Plaintiff's claim of ERISA violation fails as a matter of law. For the following reasons, Defendant's motion for summary judgment shall be granted in full.

### Factual Background

In April 2000, Plaintiff was first employed as a billing clerk with Safway Steel Products, Inc. At this time, she elected coverage for LTD benefits under Safway's group disability policy (the "Policy"), which Defendant had issued. In September 2000, while employed with Safway and covered under the Policy, Plaintiff visited her attending physician, Dr. William T. Ingram of Primary Care Associates, P.C. She reported fainting, pains in her right side, and increased lower extremity swelling. On September 21, 2000, Plaintiff went on disability leave. Her subsequent treatment included testing, monitoring, physician exams, and various medications to address numerous medical conditions and their possible consequences. Her allegedly disabling conditions included (1) hemodynamically significant cardiac dysrhythmia, (2) coronary artery disease, (3) pulmonary fibrosis, (4) histoplasmosis (respiratory condition), (5) ocular migraines, (6) vertigo, (7) renal cysts, and (8) panic attacks.

Plaintiff initially applied for short-term disability ("STD") benefits, and Defendant awarded her the 60 day maximum benefit payable, which would end on December 20, 2000. Plaintiff later applied for LTD benefits, and Defendant requested that she provide a complete list of physicians that she had seen from February 8, 2000 to the present, and her accompanying medical records. In March 2001, after performing a Disability Claim Review with an in-house consultant, Defendant denied her LTD application. According to Defendant, Plaintiff did not sufficiently demonstrate an inability to perform her occupation, and therefore did not meet the definition of "Total Disability" contained in the Policy.[1]

---

1. The Policy defines "Total Disability" and "Totally Disabled" as follows:

 Total Disability and Totally Disabled ... means that because of an Injury or Sickness:

 (a) You are unable to perform all of the material duties of Your regular occupation on a full-time basis; and

 (b) You are unable to generate Current Earnings which exceed 20% of Your Basic Monthly Earnings due to that same Injury or Sickness; and

 (c) after a Monthly Benefit has been paid for 2 years, You are unable to perform all of the material duties of any gainful occupation for which You are reasonably fitted by training, education or experience.

 NOTE: Regular occupation, as used above, means a collective description of individual jobs as defined by the United States Department of Labor Dictionary of Occupational Titles. Such jobs are considered to belong to a given occupation due to similar job characteristics, requirements and qualifications. Material duties, as used above, means duties that are normally required for the performance of Your regular occupation, and cannot be reasonably omitted or modified. Total Disability is determined by Your ability or inability to work. It is not

Plaintiff disputed the denial of LTD benefits and requested further review. From May to November 2001, Defendant requested additional medical records from Plaintiff's physicians, and performed several subsequent Disability Claim Reviews. During this time, Defendant obtained two separate physician reviews from certified independent medical examiners, who both concluded that there was insufficient medical evidence to support Plaintiff's inability to perform a sedentary occupation. Although Defendant received a dissenting opinion from Dr. Ingram, Plaintiff's treating physician, Defendant upheld the original denial of benefits.

In her complaint, Plaintiff avers that Defendant failed and refused to provide LTD benefits for Plaintiff, and therefore violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Defendant argues pursuant to Fed. R.Civ.P. 56 that Plaintiff fails to show any genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law. We agree.

### Legal Standard for Summary Judgment

Summary judgment is intended to prevent needless and costly trials where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In evaluating a motion for summary judgment, the evidence should be viewed and all reasonable inferences drawn in favor of the non-moving party. *Nieves v. Dragovich*, No. 96–6525, 1997 WL 698490, at *1, 1997 U.S. Dist. LEXIS 23410, at *2 (E.D.Pa. Nov. 3, 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505.

Movants have the initial burden of showing the court a lack of genuine issues of material fact, and can do so simply by pointing out that there is a lack of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. Movants need not support a motion with affidavits or other materials negating the non-moving party's claim. *Id.* To rebut the motion, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). The plaintiff must "present affirmative evidence" aside from the pleadings themselves to defeat a proper motion for summary judgment. *Nieves*, 1997 WL 698490, at *1, 1997 U.S. Dist. LEXIS 23410, at *3 (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505).

### Discussion

#### A. Standard of Review

 The Plaintiff brings her claim for wrongful denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA, which provides a federal cause of action for suits to recover benefits under employee benefit plans or to enforce the terms of such

determined by the availability of a suitable position with Your employer.

Ex. 5 to Defendant's Motion for Summary Judgment, at DIN–0064.

plans. The Supreme Court has held that denials of benefits challenged under 29 U.S.C. § 1132(a), like the denials challenged here, are to be reviewed *de novo* unless the plan under consideration gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case an arbitrary and capricious standard applies. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan administrator has such discretionary authority, a court must defer to him, unless the administrator's decision was "without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 393 (3d Cir.2000). However, such deference is not required if the decision is "clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." *Abnathya v. Hoffmann–La-Roche, Inc.,* 2 F.3d 40, 41 (3d Cir.1993). "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits." *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 440 (3d Cir.1997). In conducting its review of the administrator's decision, a court must look to the "record as a whole," which "consists of that evidence that was before the administrator when he made the decision being reviewed." *Id.*

■ In this case, the employer's disability plan granted Defendant the discretion to determine Plaintiff's benefits eligibility, so an arbitrary and capricious standard applies.[2] Plaintiff asserts that a *de novo* standard of review applies instead, claiming that Mitchell S. Nudelman, a non-fiduciary physician, and not Defendant, made the discretionary decision to deny benefits.

However, we find that the *de novo* standard of review does not apply to the case at bar. The entire record indicates that Defendant, not the non-fiduciary physician, made the final determination to deny Plaintiff's application for long-term disability benefits. For example, instead of denying Plaintiff's appeal based solely on Nudelman's November 12, 2001 report, Defendant performed another Disability Claim Review on November 15, 2001. Ex. 68 to Defendant's Motion for Summary Judgment, at DIN–0186. Additionally, Defendant requested that both Plaintiff and Dr. Ingram send additional medical information for further consideration of her claim. Ex. 69 and 70 to Defendant's Motion for Summary Judgment, at DIN–0185 and DIN–0184. Defendant eventually denied benefits because it did not receive the requested additional information from either Plaintiff or Dr. Ingram. Because the fiduciary actually made the final determi-

2. The Policy includes the following:

AUTHORITY TO INTERPRET POLICY

By purchasing the policy, the Policyholder grants United of Omaha Life Insurance Company the discretion and the final authority to construe and interpret the policy. This means that United has the authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits within the terms of the policy as interpreted by United. In making any decision, United may rely on the accuracy and completeness of any information furnished by the Policyholder or an insured person. United's interpretation of the policy as to the amount of benefits and eligibility shall be binding and conclusive on all persons.

The Policyholder, as Plan sponsor, agrees that the Policyholder retains full responsibility for the legal and tax status of its benefits program and releases United from all responsibility for the reporting and the employment-based design of the program and from all other responsibilities not accepted in writing by an officer of United. Ex. 5 to Defendant's Motion for Summary Judgment, at DIN–0054.

nation here, the *de novo* standard of review does not apply, and the arbitrary and capricious standard is used instead.

■] Plaintiff alternatively contends that the Court must apply a "heightened" arbitrary and capricious standard, since a "conflict of interest" exists where an insurance company both funds and administers benefits. See *Pinto,* 214 F.3d at 378. In the present case, Defendant acts as the claims administrator of the Policy. Defendant also processes all claims for payment of benefits under the Policy, and makes payment of any benefits that may be due to a beneficiary in accordance with the terms of the Policy. The Court therefore finds that a conflict of interest exists, because Defendant is an insurance company that both administers and funds the Policy. We agree that a heightened arbitrary and capricious standard of review applies here.

*B. Application of the Heightened Arbitrary and Capricious Standard to the Facts*

■ Plaintiff asserts that under the "heightened" arbitrary and capricious standard of review, a genuine issue of material fact exists. To determine if a decision is arbitrary or capricious, the Court looks not only at the result—whether it is supported by reason—but at the process by which the result was achieved. *Pinto,* 214 F.3d at 393. The Court first reviews Defendant's decision to deny Plaintiff's claim for LTD benefits under this standard, which requires a determination of whether there was a reasonable basis for Defendant's decision, based upon the facts as known to Defendant at the time the decision was made. *Sapovits v. Fortis Benefits Ins. Co.,* No. 01–3628, 2002 WL 31923047, at *6, 2002 U.S. Dist. LEXIS 24987, at *16–17 (E.D.Pa. Dec. 30, 2002) (citing *Smathers v. Multi-Tool, Inc.,* 298 F.3d 191, 199–200 (3d Cir.2002)). For such cases where an insurance company

funds, interprets, and administers a benefits plan, the Third Circuit uses a "sliding scale" approach, where the Court applies different degrees of deference depending on the apparent seriousness of the conflict. *Pinto,* 214 F.3d at 391–92. In measuring the degree of scrutiny, courts may take into account the following factors: (1) sophistication of the parties, (2) the information accessible to the parties, (3) the exact financial arrangement between the insurer and the company, and (4) the current financial status of the fiduciary. *Id.,* at 392.

As in the *Pinto* and *Sapovits* cases, this Court has found that a conflict of interest exists. Therefore, we review the record to determine both if there were any procedural irregularities in the decision-making process, as well as whether the evidence supports Defendant's decision, or whether it violates the heightened arbitrary and capricious standard. *Sapovits,* No. 01–3628, 2002 WL 31923047 at *6, 2002 U.S. Dist. LEXIS 24987 at *17 (citing *Pinto,* 214 F.3d at 392–93).

■ While we agree that a heightened arbitrary and capricious standard applies here, we find as a matter of law that Defendant's decision to deny disability benefits was not arbitrary and capricious. Since the parties rely upon the same physician reports for their arguments, there are no genuine issues of material fact, and this action is appropriate for summary judgment. See *Leonardo–Barone v. Fortis Ins. Co.,* No. 99–6256, 2000 WL 33666891, at *5, 2000 U.S. Dist. LEXIS 19001, at *12 (E.D.Pa. Dec. 28, 2000).

*1. Summary of Medical Opinions*

Defendant contends that it relied on the opinions of the following doctors: (1) William T. Ingram, D.O., of Primary Care Associates, P.C. (Plaintiff's treating physician); (2) Gerald A. Meis, D.O. (pulmonary specialist); (3) Michael Weingarten, M.D.

(Director of Vascular Surgery, Crozier Chester Medical Center); (4) David B. Arsht, D.O. (urology specialist); (5) Charles Alexander, M.D. (ophthalmologist); (6) Michael Cohen, M.D. (neurologist); (7) Dominick Pisano, D.O. (cardiology consultant); (8) D.M. Gammel, M.D. (Fellow of American Academy of Disability Evaluating Physicians); and (9) Mitchell S. Nudelman, M.D., J.D., FCLM (Chief Medical Officer of Medical Director Solutions, LLC). With the exception of Drs. Gammel and Nudelman, all of the above doctors personally examined the Plaintiff and provided medical opinions. Defendant retained Drs. Gammel and Nudelman to undertake physician reviews of Plaintiff's records and provide their independent opinions.

With the exception of Dr. Ingram, the physicians did not cite any evidence to support Plaintiff's inability to perform a sedentary occupation. The observations and opinions include the following:

A. Plaintiff had a Pulmonary Function Test with Dr. Meis on September 7, 2000. In the report, Dr. Meis stated that Plaintiff had an "obstructive defect which is mild in nature and without a bronchodilatory component," and that "some of this decrement may be emphysematous in nature." Ex. 35 to Defendant's Motion for Summary Judgment, at DIN–0357.

B. On November 27, 2000, Dr. Weingarten noted that Plaintiff has had "swelling of both legs off and on for several months," she had "some urinary problems and was found to have a cyst on her left kidney," and that she unfortunately smokes "at least two to three packs a day for the last 30 years." A cardiac exam showed that she had a "regular rhythm," while an abdominal exam did not reveal any apparent abdominal masses. Dr. Weingarten recommended that Plaintiff obtain some mild compression stockings for both legs. Ex. 30 to Defendant's Motion for Summary Judgment, at DIN–0382.

C. On December 12, 2000, Dr. Arsht reported that he believed that Plaintiff's adrenal and kidney lesions were benign, and that he did not believe that they contributed to her overall lack of well-being. Ex. 27 to Defendant's Motion for Summary Judgment, at DIN–0391.

D. On January 19, 2001, Dr. Alexander reported that Plaintiff's confrontation visual fields, external ocular examination, intraocular pressure, and internal ocular examination were all normal. He assumed that Plaintiff had episodes of "ocular migraine," and that her symptoms should be temporary; the exam was otherwise normal. Ex. 29 to Defendant's Motion for Summary Judgment, at DIN–0388.

E. On January 25, 2001, Plaintiff visited Dr. Cohen for a neurologic exam. Dr. Cohen reported that Plaintiff complained of dizziness, "fainting" sensations, and a bilateral "pulsing" sensation in the temple area, accompanied by visual changes such as "streaks of light." However, the neurologic exam indicated nothing unusual. Dr. Cohen recommended for Plaintiff to take Paxil for migraine prophylaxis. On February 19, 2001, after a follow-up exam, Dr. Cohen noted that Plaintiff had a "possible atypical migraine." Ex. 32 to Defendant's Motion for Summary Judgment, at DIN–0375.

F. On April 30, 2001, Dr. Pisano reported that Plaintiff might have myocardial ischemia, which would have to be confirmed with a cardiac catheterization or a stress echo. Otherwise, "her lungs were clear. Heart rate was regular without murmur. Abdomen was soft and the extremities showed no edema." Ex. 45 to Defendant's Motion for Summary Judgment, at DIN–0337. A stress echo test on May 31, 2001 again suggested that she had myocardial ischemia, and Dr. Pisano rec-

ommended a cardiac catheterization. Ex. 50 to Defendant's Motion for Summary Judgment, at DIN–0301.

G. Upon reviewing Plaintiff's case on June 21, 2001, Dr. Gammel stated that "[t]here is no medical evidence to support her inability to perform a sedentary operation. . . . The results of these studies do not support a disabling condition." Ex. 52 to Defendant's Motion for Summary Judgment, at DIN–0221.

H. On November 12, 2001, Dr. Nudelman reviewed the records of Plaintiff's case, and noted that "there is not sufficient objective clinical information submitted to support the claimant's assertion that she has been unable to work at her own sedentary occupation. . . ." Ex. 67 to Defendant's Motion for Summary Judgment, at DIN–0187.

I. On July 23, 2001, Dr. Ingram sent a letter to Defendant. In contrast to the above assessments, he believed "within a reasonable degree of medical certainty that [Plaintiff] is entitled to group disability benefits." He also noted that Plaintiff received a cardiac catheterization on June 6. Ex. 56 to Defendant's Motion for Summary Judgment, at DIN–0211. On August 3, 2001, Defendant requested for Dr. Ingram to send additional medical records, including progress notes from Plaintiff's cardiologist, pulmonologist, and neurologist; an evaluation by a mental health provider; and a copy of the cardiac catheterization report. Instead of sending these records, Dr. Ingram sent a letter on October 5, 2001, and merely reiterated his medical opinion that Plaintiff was entitled to LTD benefits. Ex. 64 to Defendant's Motion for Summary Judgment, at DIN–0198.

### 2. Deference to Treating Physician

Plaintiff contends that Defendant did not give "great" deference to Dr. Ingram's opinion, even though he was Plaintiff's treating physician and had been treating her for many years.[3] Plaintiff argues that this lack of deference to the treating physician renders Defendant's decision as arbitrary and capricious.

■■■ However, Defendant is not required to give special deference to Plaintiff's treating physician. Nothing in ERISA itself suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). The Supreme Court stated that "[c]ourts may not impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.,* at 833, 123 S.Ct. 1965. In this case, Defendant's reliance on medical opinions other than those of Plaintiff's treating physician is justified, even if those opinions do not concur. Therefore, although Dr. Ingram does not agree with his peers about Plaintiff's symptoms and disability status, Defendant is not required to give any special deference to him.

### 3. Nature of Clinical Evidence

Plaintiff also asserts that Defendant required unnecessary objective clinical evidence, even though the disability was based on subjective symptoms. In *Mitchell,* the Third Circuit determined that the administrator's decision to deny disability

---

**3.** For example, Plaintiff notes that Drs. Nudelman and Ingram presented contradictory information about Plaintiff's smoking habits and "serious nicotine addiction." Additional-

ly, the two physicians disagreed on whether or not Plaintiff had to receive treatment from a specialized mental health provider to successfully establish that she had panic attacks.

benefits because of lack of objective medical evidence for Chronic Fatigue syndrome ("CFS") was arbitrary and capricious. Although CFS was universally recognized as a severe disability, it had no known etiology. Two of the physicians who examined the plaintiff were unfamiliar with the condition and had difficulty with the diagnosis. *Mitchell,* 113 F.3d at 441–42. The Court found that the plaintiff's condition clearly disabled him from all substantial gainful work, so any "objective medical evidence" of the disabling condition's etiology was unnecessary. *Id.,* at 443.

 The facts of the current case, however, are not analogous to those of the *Mitchell* case. Here, Defendant was not incorrect to deny LTD benefits for lack of objective medical evidence. For conditions with known etiologies, insurance companies commonly require that the insured party provides objective medical evidence before he receives disability benefits. For example, in *Schlegel v. Life Ins. Co. Of North America,* 269 F.Supp.2d 612 (E.D.Pa.2003), the plaintiff contended that he became disabled from a combination of debilitating epileptic seizures, depression, anxiety, memory loss, and narcolepsy. This Court affirmed the insurance company's decision to deny benefits, because the record was devoid of "objective medical evidence" that supported a finding that the insured suffered from medical conditions of a severity that would prevent him from performing his job. *Id.,* at 628.

Similarly, in the case at bar, Plaintiff's purported disabilities are widely recognized ailments with established etiologies. Numerous specialists, including a pulmonologist, a vascular surgeon, a urologist, an ophthalmologist, a neurologist, and a cardiologist, all independently examined Plaintiff, yet none of these specialists supported Plaintiff's claim of total disability for any of the purportedly disabling conditions. Defendant's request for additional, "objective" medical evidence of these conditions was not unreasonable.

To summarize, we do not believe that any issue of material fact exists even under a "heightened" arbitrary and capricious standard. In this case, the facts indicate that Defendant actively sought additional medical information from Plaintiff and Dr. Ingram, and reconsidered the claim several times. Defendant's process does not indicate a decision made "without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Pinto,* 214 F.3d at 393. As a result, Defendant's motion for summary judgment must be granted.

An order follows.

### ORDER

AND NOW, this 29th day of July, 2004, upon consideration of Defendant United of Omaha Life Insurance Company's Motion for Summary Judgment (Document No. 4), Plaintiff's response thereto (Document Nos. 5 and 6), and Defendant's reply thereto (Document No. 7), it is hereby ORDERED and DECREED, for the reasons stated in the accompanying Memorandum, that said Motion is GRANTED, and that judgment is hereby entered in favor of the Defendant and against the Plaintiff.