**Opinions of the United States Court of Appeals for the Third Circuit**



6-21-2005

# Cerneskie v. Mellon Bank Long

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1908

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Cerneskie v. Mellon Bank Long" (2005). *2005 Decisions.* Paper 983.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/983

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1908

CAROL A. CERNESKIE, Appellant

v.

MELLON BANK LONG TERM DISABILITY PLAN


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 01-1814)
District Judge: The Honorable David S. Cercone

_____

Submitted Under Third Circuit LAR 34.1(a)
May 10, 2005

Before: SLOVITER and FISHER, Circuit Judges,
and POLLAK,* District Judge.

(filed: June 21, 2005)
_____

OPINION OF THE COURT
_____

*Honorable Louis H. Pollak, Senior District Judge for the United States District
Court of the Eastern District of Pennsylvania, sitting by designation.

POLLAK, District Judge:

Carol Cerneskie ("Cerneskie") challenges the District Court's grant of summary judgment against her on her claim that appellee Mellon Bank Long Term Disability Plan ("the Plan" or "Mellon") wrongfully denied her long term disability ("LTD") benefits. Reviewing the administrative record, the District Court found that the Plan had not acted arbitrarily and capriciously in denying Cerneskie the benefits she sought, under *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), and that the Plan's decision must therefore be upheld. Cerneskie argues that the Plan did act arbitrarily and capriciously, and that the District Court erred as a matter of law by applying *Black & Decker* to find that the Plan had not so acted. We conclude that the District Court did not err, and accordingly we will affirm.

I.

Before this dispute arose, Cerneskie was employed as a Personal Banker at Mellon Bank. Cerneskie ceased work after November 26, 1997, claiming to be totally disabled by depression, anxiety, and neck and back pain. She received short term disability benefits from the company through early May 1998. Her psychiatrist, Dr. Rodney S. Altman, noted steady improvement during this period, and released her to return to work as of May 4, 1998. However, she did not return to work on that date, but instead submitted a note, from a Dr. K. N. Shetty, stating that she would not return to work pending further evaluation of her condition.

2

Cerneskie submitted a claim for LTD benefits to Mellon Bank on June 1, 1998. In support of this claim, she submitted a June 6, 1998, report by Dr. Shetty declaring that Cerneskie was unable to work in any occupation. Likewise, in a report dated June 18, 1998, Dr. Altman diagnosed Cerneskie with major depression, and gave it as his opinion that she was unable to perform any occupation. This report was issued on a two-page form, and did not provide any detailed analysis of Cerneskie's condition, or its likely duration.

In November 1998, Dr. Altman submitted to Mellon his notes of two additional office visits with Cerneskie. At a visit on September 3, 1998, Dr. Altman found Cerneskie still unable to work, because of fatigue. On October 13, 1998, Dr. Altman noted that Cerneskie's "appetite [was] OK," that she was "sleeping OK," and that she had no panic. She had no delusions, hallucinations, or anxiety, and her mood was moderate. Her anxiety was controlled with medication, and Dr. Altman found that she was "doing well." He did not comment on her ability to work at that time.

Neither Dr. Shetty nor Dr. Altman returned to Mellon the company's physical ability assessment, psychiatric impairment form, or disability questionnaire. Dr. Altman's supplemental office notes, described above, appear to be the only additional evidence submitted concerning Cerneskie's mental status.

The Plan denied Cerneskie's claim for LTD benefits on January 13, 1999. After Cerneskie appealed this decision under the Plan's internal review procedures, the Plan

granted Cerneskie LTD benefits for the period of May 27, 1998 through October 13, 1998, based on her claim of depression. The Plan reserved judgment on benefits after that date, pending an independent medical exam it required Cerneskie to complete. Based on the results of that exam, which included findings that Cerneskie demonstrated "inconsistent effort" and appeared to overstate her pain and physical limitations, the Plan ultimately found that Cerneskie was not eligible for benefits after October 13, 1998.

Cerneskie filed an action protesting this denial of benefits in the Court of Common Pleas of Beaver County, Pennsylvania, naming Mellon Bank as defendant. Mellon Bank removed to the United States District Court for the Western District of Pennsylvania, and moved to dismiss the case on the ground that the Plan was the only proper defendant. After Cerneskie amended her complaint to name the Plan as defendant, the Plan and Cerneskie both filed motions for summary judgment in May 2002. In March 2004, the District Court granted the Plan's motion for summary judgment and denied Cerneskie's motion.[1]

## II.

We have jurisdiction to review this final disposition of Cerneskie's claim under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment *de novo*, using the same legal standard applicable in the District Court: summary judgment is

---

[1]Judge Cindrich presided over the earlier stages of the case. In 2004, the case was re-assigned to Judge Cercone, who decided the summary judgment motions.

warranted only if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. *Samaroo v. Samaroo*, 193 F.3d 185, 189 (3d Cir. 1999).

The District Court found that, based on the medical evidence before it, the Plan had not acted arbitrarily and capriciously in denying Cerneskie's claim for LTD benefits, and summary judgment was warranted. The District Court also found that the Supreme Court's decision in *Black & Decker* precluded Cerneskie's argument that the Plan had not given proper weight to the opinions of Cerneskie's treating physicians.

Cerneskie's first challenge is to the District Court's use of the "arbitrary and capricious" standard to evaluate the Plan's actions. This is the standard ordinarily used to review decisions by plan administrators vested with discretion under the terms of a plan. *See Firestone Tire & Rubber Co. v. Bruch*, 498 U.S. 101, 111 (1989). However, although she apparently did not do so in the District Court, Cerneskie now contends that the District Court should have applied a heightened form of arbitrary and capricious review, because the Plan was operating under a conflict of interest. *See Pinto v. Reliance Standard Ins. Co.*, 214 F.3d 377 (3d Cir. 2000). Even if this issue is properly before us, which is not entirely clear, Cerneskie has failed to offer any evidence of a conflict that would justify reduced deference to the Plan's benefit determinations.[2] Therefore, we will

---

[2]The plan documents establish that the Plan is funded by a trust that is dedicated exclusively to the Plan and may not revert to Mellon Bank under any circumstances. Although CIGNA Group Insurance provided certain forms used by the Plan, and appears to have performed some administrative tasks, Cerneskie has not offered any persuasive evidence that CIGNA was anything but a technical administrator for the Plan.

5

apply the ordinary arbitrary and capricious standard.

Applying that standard to the record before us, we find that there is no basis for finding that the Plan acted arbitrarily and capriciously in denying Cerneskie LTD benefits. Cerneskie contends that, given Dr. Altman's June 18, 1998, finding that she was incapacitated due to major depression, the Plan improperly failed to credit her argument that she is psychologically disabled due to depression. However, Dr. Altman made no finding that Cerneskie was or would be permanently disabled, and he failed to provide the Plan with a requested update of his opinion. Also, Dr. Altman's notes from earlier in 1998, which indicate steady improvement in Cerneskie's condition, and his release for her to return to work in May 1998, all of which were in the record considered by the Plan, indicate that Cerneskie's condition had been at least somewhat variable. In light of this overall pattern of her illness, and the absence of contrary records, Dr. Altman's office notes from autumn of 1998, on which the Plan relied in denying benefits after October 13, 1998, are arguably more persuasive than they might otherwise be.[3] Although Dr.

---

[3]Cerneskie offers *Skretvedt v. E.I. Dupont de Nemours & Co.*, 268 F.3d 167 (3d Cir. 2001), for the sweeping proposition that a plan administrator cannot dismiss a claim on the basis of a physician's office notes. *Skretvedt* is not so broad. The court in *Skretvedt* found that "even under the deferential arbitrary and capricious standard, Dupont's denial of Skretvedt's incapability benefits claim must be rejected because it was unsupported by substantial evidence." *Id.* at 184. However, the evidence Skretvedt presented was far more powerfully favorable than the evidence Cerneskie has presented here. Skretvedt had seen multiple doctors, who unanimously agreed that he was disabled and likely to remain so, and later re-affirmed their original findings of disability, re-emphasizing the intractability of Skretvedt's condition. The court refused to dismiss this medical consensus on the basis of a few minor quibbles raised by the plan, including

6

Altman's notes might be equally consistent with a finding of continued disability, we cannot say that, in context, the Plan's decision to reject that view was arbitrary or capricious.

Cerneskie also argues that the District Court misapplied *Black & Decker*. In *Black & Decker*, the Court declined to extend to ERISA benefits claims the "treating physician rule" applicable in Social Security cases, under which deference is due to the opinion of a claimant's regular treating physician. The Court found that, while the rule is proper in the context of Social Security claims, the courts may not transfer it to ERISA claims, which arise under a very different statutory framework.

*Black & Decker* found that, under ERISA, no special deference was due to treating physicians. As Justice Ginsburg wrote, "[n]othing in the Act [ERISA] itself, however, suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker*, 538 U.S. at 831. The Court held that "courts have no warrant to require administrators

_____

some based on office notes. This fact-specific refusal does not mean that a plan may never rely on office notes in making a benefits determination.

Also, to the extent that *Skretvedt* might imply approval of a treating physician rule for ERISA cases, it would conflict with *Black & Decker*, discussed in the text. *Skretvedt*, 268 F.3d at 184 ("We have long recognized that in the analogous area of disability benefits determinations under the Social Security Act, the opinions of a claimant's treating physicians are entitled to substantial and at times even controlling weight." (quotation and alterations omitted)).

automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834. We have no warrant to disregard this plain guidance from the Court.

Cerneskie contends that *Black & Decker* prohibits the Plan from rejecting the opinion of her treating physician – Dr. Altman – on the basis of his notes of subsequent office visits. Cerneskie points to the Court's statement in *Black & Decker* that, although no special deference is due, "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 834. The Plan did not "refuse to credit" Dr. Altman's June 1998 opinion, however. The Plan paid benefits through October 1998, based on Dr. Altman's finding of disability due to depression. Cerneskie had the opportunity to provide supplemental medical reports or opinions before the final denial of her claim, but failed to do so. Based on the record before us, we cannot say that the District Court erred in concluding that the Plan did not act arbitrarily in refusing to accept Dr. Altman's opinion as irrefutable proof of permanent total disability.

IV.

The District Court properly granted summary judgment to the Plan, and its judgment will be affirmed.

8