# BLACK & DECKER DISABILITY PLAN *v.* NORD

No. 02–469. Argued April 28, 2003—Decided May 27, 2003

GINSBURG, J., delivered the opinion for a unanimous Court.

*Lee T. Paterson* argued the cause for petitioner. With him on the briefs were *John R. Ates, Amanda C. Sommerfeld,* and *William G. Bruner III.*

*Lisa Schiavo Blatt* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were *Solicitor General Olson, Deputy Solicitor General Kneedler, Howard M. Radzely, Allen H. Feldman, Nathaniel I. Spiller,* and *Mark S. Flynn.*

*Lawrence D. Rohlfing* argued the cause for respondent. With him on the brief was *Eric Schnapper.**

---

*Briefs of *amici curiae* urging reversal were filed for the American Benefits Council by *Robert N. Eccles* and *Jonathan D. Hacker;* for the American Council of Life Insurers et al. by *William J. Kayatta, Jr., Mark E. Schmidtke,* and *Victoria E. Fimea;* for the Bert Bell/Pete Rozelle NFL Player Retirement Plan by *Douglas W. Ell, John P. McAllister,* and *Alvaro I. Anillo;* for the Central States, Southeast and Southwest Areas Health and Welfare Fund by *Thomas C. Nyhan, James P. Condon,* and *John J. Franczyk, Jr.;* for the Delta Family-Care Disability and Survivorship Plan et al. by *Hunter R. Hughes;* for the ERISA Industry Committee by *Caroline M. Brown* and *John M. Vine;* for the National Association of Manufacturers et al. by *Frederick R. Damm, Lira A. Johnson, Jan S. Amundson,* and *Quentin Riegel;* and for Peabody Energy Corp. et al. by *Mark E. Solomons* and *Laura Metcoff Klaus.*

Briefs of *amici curiae* urging affirmance were filed for the AARP by *Mary Ellen Signorille* and *Melvin R. Radowitz;* for the American Medical Association by *Joseph R. Guerra* and *Jack R. Bierig;* for the National Employment Lawyers Association by *Jeffrey Lewis, Jenifer Bosco, Daniel T. Driesen,* and *Ronald Dean;* and for the National Organization of Social Security Claimants' Representatives by *Nancy G. Shor, Eric Schnaufer, Robert E. Rains,* and *Jon Holder.*

JUSTICE GINSBURG delivered the opinion of the Court.

Under a rule adopted by the Commissioner of Social Security, in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician. See 20 CFR §§ 404.1527(d)(2), 416.927(d)(2) (2002). This case presents the question whether a similar "treating physician rule" applies to disability determinations under employee benefits plans covered by the Employee Retirement Income Security Act of 1974 (ERISA or Act), 88 Stat. 832, as amended, 29 U. S. C. § 1001 *et seq.* We hold that plan administrators are not obliged to accord special deference to the opinions of treating physicians.

ERISA and the Secretary of Labor's regulations under the Act require "full and fair" assessment of claims and clear communication to the claimant of the "specific reasons" for benefit denials. See 29 U. S. C. § 1133; 29 CFR § 2560.503–1 (2002). But these measures do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition. Because the Court of Appeals for the Ninth Circuit erroneously applied a "treating physician rule" to a disability plan governed by ERISA, we vacate that court's judgment and remand for further proceedings.

I

Petitioner Black & Decker Disability Plan (Plan), an ERISA-governed employee welfare benefit plan, covers employees of Black & Decker Corporation (Black & Decker) and certain of its subsidiaries. The Plan provides benefits for eligible employees with a "disability." As relevant here, the Plan defines "disability" to mean "the complete inability . . . of a Participant to engage in his regular occupation with

the Employer."[1] 296 F. 3d 823, 826, n. 2 (CA9 2002). Black & Decker both funds the Plan and acts as plan administrator, but it has delegated authority to Metropolitan Life Insurance Company (MetLife) to render initial recommendations on benefit claims. Disability determinations, the Black & Decker Plan provides, "[are to] be made by the [plan administrator] based on suitable medical evidence and a review of the Participant's employment history that the [plan administrator] deems satisfactory in its sole and absolute discretion." *Id.*, at 826, n. 1.

Respondent Kenneth L. Nord was formerly employed by a Black & Decker subsidiary as a material planner. His job, classed "sedentary," required up to six hours of sitting and two hours of standing or walking per day. *Id.*, at 826.

In 1997, Nord consulted Dr. Leo Hartman about hip and back pain. Dr. Hartman determined that Nord suffers from a mild degenerative disc disease, a diagnosis confirmed by a Magnetic Resonance Imaging scan. After a week's trial on pain medication prescribed by Dr. Hartman, Nord's condition remained unimproved. Dr. Hartman told Nord to cease work temporarily, and recommended that he consult an orthopedist while continuing to take the pain medication.

Nord submitted a claim for disability benefits under the Plan, which MetLife denied in February 1998. Nord next exercised his right to seek further consideration by MetLife's "Group Claims Review." *Id.*, at 827. At that stage, Nord submitted letters and supporting documentation from Dr. Hartman and a treating orthopedist to whom Hartman had referred Nord. Nord also submitted a questionnaire form, drafted by Nord's counsel, headed "Work Capacity Evaluation." Black & Decker human resources representa-

---

[1] The Plan sets out a different standard for determining whether an employee is entitled to benefits for a period longer than 30 months. Because respondent Nord sought benefits "for up to 30 months," 296 F. 3d 823, 826 (CA9 2002), the standard for longer term disability is not in play in this case.

tive Janmarie Forward answered the questions, as the form instructed, by the single word "yes" or "no." One of the six items composing the "Work Capacity Evaluation" directed Forward to "[a]ssume that Kenneth Nord would have a moderate pain that would interfere with his ability to perform intense interpersonal communications or to act appropriately under stress occasionally (up to one-third) during the day." Lodging for Pet. for Cert. L–37. The associated question asked whether an "individual of those limitations [could] perform the work of a material planner." *Ibid.* Forward marked a space labeled "no."

During the MetLife review process, Black & Decker referred Nord to neurologist Antoine Mitri for an independent examination. Dr. Mitri agreed with Nord's doctors that Nord suffered from a degenerative disc disease and chronic pain. But aided by pain medication, Dr. Mitri concluded, Nord could perform "sedentary work with some walking interruption in between." *Id.*, at L–45. MetLife thereafter made a final recommendation to deny Nord's claim.

Black & Decker accepted MetLife's recommendation and, on October 27, 1998, so informed Nord. The notification letter summarized the conclusions of Nord's doctors, the results of diagnostic tests, and the opinion of Dr. Mitri. See *id.*, at L–155 to L–156. It also recounted that Black & Decker had forwarded Dr. Mitri's report to Nord's counsel with a request for comment by Nord's attending physician. Although Nord had submitted additional information, the letter continued, he had "provided . . . no new or different information that would change [MetLife's] original decision." *Id.*, at L–156. The letter further stated that the Work Capacity Evaluation form completed by Black & Decker human resources representative Forward was "not sufficient to reverse [the Plan's] decision." *Ibid.*

Seeking to overturn Black & Decker's determination, Nord filed this action in Federal District Court "to recover benefits due to him under the terms of his plan." 29 U. S. C.

§ 1132(a)(1)(B). On cross-motions for summary judgment, the District Court granted judgment for the Plan, concluding that Black & Decker's denial of Nord's claim was not an abuse of the plan administrator's discretion.

The Court of Appeals for the Ninth Circuit roundly reversed and itself "grant[ed] Nord's motion for summary judgment." 296 F. 3d, at 832. Nord's appeal, the Ninth Circuit explained, was controlled by that court's recent decision in *Regula* v. *Delta Family-Care Disability Survivorship Plan*, 266 F. 3d 1130 (2001). 296 F. 3d, at 829. The Ninth Circuit had held in *Regula* that, when making benefit determinations, ERISA plan administrators must follow a "treating physician rule." See 266 F. 3d, at 1139–1144. As described by the appeals court, the rule required an administrator "who rejects [the] opinions [of a claimant's treating physician] to come forward with specific reasons for his decision, based on substantial evidence in the record." *Id.*, at 1139. Declaring that Nord was entitled to judgment as a matter of law, the Ninth Circuit emphasized that Black & Decker fell short under the treating physician rule: The plan administrator had not provided adequate justification, the Court of Appeals said, for rejecting opinions held by Dr. Hartman and others treating Nord on Hartman's recommendation. 296 F. 3d, at 830–832.

We granted certiorari, 537 U. S. 1098 (2002), in view of the division among the Circuits on the propriety of judicial installation of a treating physician rule for disability claims within ERISA's domain. Compare *Regula*, 266 F. 3d, at 1139; *Donaho* v. *FMC Corp.*, 74 F. 3d 894, 901 (CA8 1996), with *Elliott* v. *Sara Lee Corp.*, 190 F. 3d 601, 607–608 (CA4 1999); *Delta Family-Care Disability and Survivorship Plan* v. *Marshall*, 258 F. 3d 834, 842–843 (CA8 2001); *Turner* v. *Delta Family-Care Disability and Survivorship Plan*, 291 F. 3d 1270, 1274 (CA11 2002). See also *Salley* v. *E. I. DuPont de Nemours & Co.*, 966 F. 2d 1011, 1016 (CA5 1992) (expressing "considerable doubt" on the question whether a

treating physician rule should govern ERISA cases). Concluding that courts have no warrant to order application of a treating physician rule to employee benefit claims made under ERISA, we vacate the Ninth Circuit's judgment and remand the case for further proceedings.[2]

## II

The treating physician rule at issue here was originally developed by Courts of Appeals as a means to control disability determinations by administrative law judges under the Social Security Act, 49 Stat. 620, 42 U. S. C. § 231 *et seq.* See Maccaro, The Treating Physician Rule and the Adjudication of Claims for Social Security Disability Benefits, 41 Soc. Sec. Rep. Serv. 833, 833–834 (1993). In 1991, the Commissioner of Social Security adopted regulations approving and formalizing use of the rule in the Social Security disability program. See 56 Fed. Reg. 36961, 36968 (codified at 20 CFR §§ 404.1527(d)(2), 416.927(d)(2) (2002)). The Social Security Administration, the regulations inform, will generally "give more weight to opinions from . . . treating sources," and "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 404.1527(d)(2), 416.927(d)(2).

Concluding that a treating physician rule should similarly govern private benefit plans under ERISA, the Ninth Circuit said in *Regula* that its "reasons ha[d] to do with common sense as well as consistency in [judicial] review of disability determinations where benefits are protected by federal law." 266 F. 3d, at 1139. "Just as in the Social Security context," the court observed, "the disputed issue in ERISA disability determinations concerns whether the facts of the beneficiary's case entitle him to benefits." *Ibid.* The Ninth Circuit

---

[2] The Plan sought review only of the Court of Appeals' holding "that an ERISA disability plan administrator's determination of disability is subject to the 'treating physician rule.'" Pet. for Cert. i. We express no opinion on any other issues.

perceived "no reason why the treating physician rule should not be used under ERISA in order to test the reasonableness of the [plan] administrator's positions." *Ibid.* The United States urges that the Court of Appeals "erred in equating the two [statutory regimes]." Brief for United States as *Amicus Curiae* 23. We agree.[3]

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co.* v. *Bruch,* 489 U. S. 101, 113 (1989) (internal quotation marks and citations omitted). The Act furthers these aims in part by regulating the manner in which plans process benefits claims. Plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U. S. C. § 1133(1). ERISA further requires that plan procedures "afford a rea-

---

[3] The treating physician rule has not attracted universal adherence outside the Social Security context. Some courts have approved a rule similar to the Social Security Commissioner's for disability determinations under the Longshore and Harbor Workers' Compensation Act, 33 U. S. C. § 901 *et seq.,* see, *e. g., Pietrunti* v. *Director, Office of Workers' Compensation Programs,* 119 F. 3d 1035, 1042 (CA2 1997), and the Secretary of Labor has adopted a version of the rule for benefit determinations under the Black Lung Benefits Act, 30 U. S. C. § 901 *et seq.,* see 20 CFR § 718.104(d)(5) (2002). One Court of Appeals, however, has rejected a treating physician rule for the assessment of claims of entitlement to veterans' benefits for service-connected disabilities, see *White* v. *Principi,* 243 F. 3d 1378, 1381 (CA Fed. 2001), and another has rejected such a rule for disability determinations under the Railroad Retirement Act of 1974, 45 U. S. C. § 231 *et seq.,* see *Dray* v. *Railroad Retirement Bd.,* 10 F. 3d 1306, 1311 (CA7 1993). Furthermore, there appears to be no uniform practice regarding application of a treating physician rule under state workers' compensation statutes. See *Conradt* v. *Mt. Carmel School,* 197 Wis. 2d 60, 69, 539 N. W. 2d 713, 717 (Ct. App. 1995) ("Conradt misrepresents the state of the law when she claims that a majority of states have adopted the 'treating physician rule.'").

sonable opportunity . . . for a full and fair review" of dispositions adverse to the claimant. § 1133(2). Nothing in the Act itself, however, suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion.

ERISA empowers the Secretary of Labor to "prescribe such regulations as he finds necessary or appropriate to carry out" the statutory provisions securing employee benefit rights. § 1135; see § 1133 (plans shall process claims "[i]n accordance with regulations of the Secretary"). The Secretary's regulations do not instruct plan administrators to accord extra respect to treating physicians' opinions. See 29 CFR § 2560.503–1 (1997) (regulations in effect when Nord filed his claim); 29 CFR § 2560.503–1 (2002) (current regulations). Notably, the most recent version of the Secretary's regulations, which installs no treating physician rule, issued more than nine years after the Social Security Administration codified a treating physician rule in that agency's regulations. Compare 56 Fed. Reg. 36932, 36961 (1991), with 65 Fed. Reg. 70265 (2000).

If the Secretary of Labor found it meet to adopt a treating physician rule by regulation, courts would examine that determination with appropriate deference. See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). The Secretary has not chosen that course, however, and an *amicus* brief reflecting the position of the Department of Labor opposes adoption of such a rule for disability determinations under plans covered by ERISA. See Brief for United States as *Amicus Curiae* 7–27. Although Congress "expect[ed]" courts would develop "a federal common law of rights and obligations under ERISA-regulated plans," *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U. S. 41, 56 (1987), the scope of permissible judicial innovation is narrower in areas where other federal actors are engaged,

cf. *Milwaukee* v. *Illinois*, 451 U. S. 304, 317–332 (1981) (because Congress had enacted a comprehensive regulatory program dealing with discharge of pollutants into the Nation's waters, the State could not maintain a federal common-law nuisance action against the city based on the latter's pollution of Lake Michigan).

The question whether a treating physician rule would "increas[e] the accuracy of disability determinations" under ERISA plans, as the Ninth Circuit believed it would, *Regula,* 266 F. 3d, at 1139, moreover, seems to us one the Legislature or superintending administrative agency is best positioned to address. As compared to consultants retained by a plan, it may be true that treating physicians, as a rule, "ha[ve] a greater opportunity to know and observe the patient as an individual." *Ibid.* (internal quotation marks and citation omitted). Nor do we question the Court of Appeals' concern that physicians repeatedly retained by benefits plans may have an "incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements." *Id.,* at 1143. But the assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration, or when a specialist engaged by the plan has expertise the treating physician lacks. And if a consultant engaged by a plan may have an "incentive" to make a finding of "not disabled," so a treating physician, in a close case, may favor a finding of "disabled." Intelligent resolution of the question whether routine deference to the opinion of a claimant's treating physician would yield more accurate disability determinations, it thus appears, might be aided by empirical investigation of the kind courts are ill equipped to conduct.

Finally, and of prime importance, critical differences between the Social Security disability program and ERISA benefit plans caution against importing a treating physician

rule from the former area into the latter. The Social Security Act creates a nationwide benefits program funded by Federal Insurance Contributions Act payments, see 26 U. S. C. §§ 3101(a), 3111(a), and superintended by the Commissioner of Social Security. To cope with the "more than 2.5 million claims for disability benefits [filed] each year," *Cleveland* v. *Policy Management Systems Corp.*, 526 U. S. 795, 803 (1999), the Commissioner has published detailed regulations governing benefits adjudications. See, *e. g.*, *id.*, at 803–804. Presumptions employed in the Commissioner's regulations "grow out of the need to administer a large benefits system efficiently." *Id.*, at 804. By accepting and codifying a treating physician rule, the Commissioner sought to serve that need. Along with other regulations, the treating physician rule works to foster uniformity and regularity in Social Security benefits determinations made in the first instance by a corps of administrative law judges.

In contrast to the obligatory, nationwide Social Security program, "[n]othing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp.* v. *Spink*, 517 U. S. 882, 887 (1996). Rather, employers have large leeway to design disability and other welfare plans as they see fit. In determining entitlement to Social Security benefits, the adjudicator measures the claimant's condition against a uniform set of federal criteria. "[T]he validity of a claim to benefits under an ERISA plan," on the other hand, "is likely to turn," in large part, "on the interpretation of terms in the plan at issue." *Firestone Tire*, 489 U. S., at 115. It is the Secretary of Labor's view that ERISA is best served by "preserv[ing] the greatest flexibility possible for . . . operating claims processing systems consistent with the prudent administration of a plan." Department of Labor, Employee Benefits Security Administration, http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html, Question B–4 (as visited May 6, 2003)

(available in Clerk of Court's case file). Deference is due that view.

Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.[4] The Court of Appeals therefore erred when it employed a treating physician rule lacking Department of Labor endorsement in holding that Nord was entitled to summary judgment.

\* \* \*

For the reasons stated, the judgment of the United States Court of Appeals for the Ninth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[4] Nord asserts that there are two treating physician rules: a "procedural" rule, which requires a hearing officer to explain why she rejected the opinions of a treating physician, and a "substantive" rule, which requires that "more weight" be given to the medical opinions of a treating physician. Brief for Respondent 12–13 (internal quotation marks omitted). In this case, Nord contends, the Court of Appeals applied only the "procedural" version of the rule. *Id.*, at 13. We are not certain that Nord's reading of the Court of Appeals decision is correct. See 296 F. 3d, at 831 (faulting the Plan for, *inter alia,* having "[n]o evidence . . . that Nord's treating physicians considered inappropriate factors in making their diagnosis or that Nord's physicians lacked the requisite expertise to draw their medical conclusions"). At any rate, for the reasons explained in this opinion, we conclude that ERISA does not support judicial imposition of a treating physician rule, whether labeled "procedural" or "substantive."