COLLOTON, Circuit Judge,
dissenting.
The crux of Billy Harden’s claim on appeal is that Metropolitan Life Insurance Company (“MetLife”), in determining Harden’s eligibility for benefits under his employer’s long term disability plan (“Plan”), should have considered reports of Dr. Jim Aukestuolis, a psychiatrist who examined Harden and opined on his condition. Harden asserts that the Aukestuolis reports, which were included in a file considered by the Social Security Administration for its separate decision on government disability benefits, would have demonstrated that Harden is “totally disabled” under the Plan.
I agree with the district court that Harden had ample opportunity to make the Aukestuolis reports part of the administrative record, and that the absence of those reports from the record is fairly attributable to Harden and his counsel, rather than to a “serious procedural irregularity” committed by MetLife. See Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir.1996) (requirements for heightened review of administrator’s decision). I do not believe that MetLife had an independent duty to develop the administrative record by obtaining records from the Social Security Administration, and I respectfully dissent.
Harden filed his claim for long term disability benefits with MetLife on March 12, 2000. The claim form required that he “list all healthcare providers from current to past.” Harden listed five physicians, but did not include Dr. Aukestuolis. (App. 339).[1] A more detailed form entitled “Activities of Daily Living” asked Harden to describe his present condition, including “any physical and/or psychiatric/psychological limitations,” and to “list all Attending Physicians and Specialists to which you have been referred for this condition.” Harden listed five physicians on this form, but did not mention Dr. Aukestuolis. (App. 345). On that same date, Harden also signed two authorizations to release medical records: an “authorization to furnish medical information,” which permitted any physician or provider of medical services to furnish records to MetLife (App. 340), and “an authorization to secure award or disallowance information,” which allowed the Social Security Administration to release medical information and award notices to MetLife. (App. 341).
Six months later, on September 19, 2000, MetLife informed Harden in writing that his claim for long term disability benefits was denied, because it did not meet the criteria set forth in the Plan. With respect to the administrative record, the letter stated:
All available documentation has been carefully reviewed. These records include, but are not necessarily limited to, the following:
• Attending Physician Statement completed by Dr. William Fiser July 21, 2000
• Attending Physician Statement completed by Dr. Charles Barg July 20, 2000
• Head-up tilt test May 22, 2000
• Office notes from Dr. Hicks
(App. 51). The denial letter advised Harden that he “may request a review of the claim in writing,” and said, “You may also submit additional medical or vocational information and any facts, data, questions or comments you deem appropriate for us to *502 give your appeal proper consideration.” (App. 52).
Harden’s counsel then wrote to MetLife on November 21, 2000, and stated that Harden would appeal the decision. Counsel’s letter stated that “[additional medical and/or vocational information will be submitted for your review,” and requested that MetLife “[p]lease furnish us copies of the medical reports upon which you relied in making your decision.” (App. 148). MetLife acknowledged the appeal letter with a return letter dated the very next day, and advised Harden’s counsel that “[a]ny new information that you wish to have considered in this appeal must be received in our office no later than December 14, 2000. If no further information is received, Mr. Harden’s file will be reviewed by our Appeal Unit with the information currently on file.” (App. 150) (emphasis in original).
Harden’s counsel submitted a vocational assessment to MetLife on December 6, 2000, but never submitted any records from Dr. Aukestuolis or any other medical professional to augment those listed in MetLife’s denial letter of September 19, 2000. On January 29, 2001, MetLife notified Harden that his appeal was denied. The appeal decision noted that MetLife had “received additional vocational information to review,” but “did not receive any additional medical information to review as part of the appeal.” (App. 11).
I respectfully disagree that MetLife’s “failure to obtain the Social Security records amounted to a serious procedural irregularity” that justifies heightened review of the administrator’s decision, and a remand to the administrator for further proceedings. Harden failed to list Dr. Aukes-tuolis as a treating physician on either of the claim forms that requested the names of all health care providers. MetLife listed in its denial letter of September 19 medical records upon which it relied in making the benefit determination, and records from Dr. Aukestuolis were not included. MetLife notified Harden twice that he could submit any additional medical information that he wished the administrator to consider on appeal.
A reasonable claimant, particularly one represented by counsel, should have known to submit additional medical records that were not listed in MetLife’s denial letter if he wanted to ensure that the records were considered. Indeed, Harden’s counsel even advised MetLife that Harden would submit additional medical information, but then failed to do so. If Harden and his counsel decided to assume that MetLife was considering other medical records that were not listed in the denial letter, simply because Mr. Harden had signed a general release of Social Security information six months earlier, then that strikes me as an unreasonable decision by the claimant and his counsel, rather than a serious procedural irregularity by the administrator.
As the court’s own observations show, ante at 4, this is not a case where MetLife buried its head in the sand in an effort to avoid an award of benefits. The record demonstrates that if Mr. Harden merely had listed Dr. Aukestuolis’s name on either of the two claim forms calling for “all health care providers” or “all Attending Physicians and Specialists,” respectively, or in response to either of the two followup invitations to submit additional medical information, then MetLife would have made diligent efforts to locate the doctor and obtain his evaluation of the claimant. Even viewing Harden’s position through the court’s charitable lens,[2] therefore, the *503 most that can be said is that MetLife had an honest misunderstanding about whether it could expect Harden to provide the names of all treating physicians on claim forms that asked him to list all treating physicians. A decision to set aside the administrator’s decision under those circumstances cannot comfortably be squared with precedent that calls for heightened review upon a showing that the administrator acted under a conflict of interest, “dishonestly,” based on “an improper motive,” or after “failing to use judgment,” such that a denial of benefits was the result of “an arbitrary decision or whim.” Buttram, 76 F.3d at 900-01 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)).
The Supreme Court recently made clear that rules regulating disability benefit determinations under the Social Security program generally do not govern private benefit plans under ERISA. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832-33, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Just as ERISA does not require the plan administrator to accord special deference to the opinions of treating physicians, or impose a heightened burden of explanation on administrators when they reject a treating physician’s opinion, id. at 834, ERISA does not require a plan administrator on its own initiative to “develop the record” as though the administrator were an administrative law judge in the Social Security Administration. Cf. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir.2002).
Of course, the administrator must comply with its fiduciary duties to beneficiaries under an ERISA plan, and heightened review applies if “the denial of benefits was the result of arbitrary decision or whim.” Buttram, 76 F.3d at 901. But I find nothing in ERISA or the common law of trusts that prevents an administrator from requiring an applicant to identify with a reasonable degree of specificity the records that allegedly support his claim for benefits. Therefore, I respectfully dissent.

. Citations to the appendix refer to the separate appendix filed by appellees.

. Whatever may be said about the reasonableness of Mr. Harden's claim that signing the *503 Social Security release form led him to believe that MetLife would consider records from Dr. Aukestuolis during the administrative review process, Harden could not be misled in any relevant sense by correspondence that he received from MetLife after the denial of his administrative appeal, ante at 499- 500, which MetLife said "constitute!/!] the completion of the full and fair review required by the Plan[.]” (App. 102).