Sandra FROST, Plaintiff–Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY; Wells Fargo and Company Long Term Disability Plan, Defendants–Appellees.

No. 07–55196.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 24, 2008.

Filed March 25, 2009.

Glenn R. Kantor, Managing Senior Counsel, Lisa S. Kantor, Esquire, Managing Senior Counsel, Alan E. Kassan, Esquire, Kantor & Kantor, LLP, Northridge, CA, for Plaintiff–Appellant.

Lawrence E. Butler, Seyfarth Shaw, LLP, Rebecca Ann Hull, Sedgwick, Detert, Moran & Arnold LLP, San Francisco, CA, for Defendant–Appellee.

Before: CALLAHAN and IKUTA, Circuit Judges, and SHADUR,* District Judge.

MEMORANDUM **

The district court properly reviewed MetLife's denial of benefits for abuse of discretion. *See Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir.2006). The plan grants discretionary authority to "the Plan administrator and other Plan fiduciaries," which includes MetLife as the claims administrator. *See*

---

\* The Honorable Milton I. Shadur, Senior United States for the Northern District of Illinois, sitting by designation.

\*\* This disposition is not appropriate for publication and except as provided by 9th Cir. R. 36–3.

*Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 866–67 (9th Cir.2008).

MetLife abused its discretion in denying Frost benefits for the remainder of the 24–month period in which the Plan provided disability benefits if "you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy." The Plan defined "Own Occupation" as "the activity that you regularly perform and that serves as your source of income. It is not limited to the specific position you held with your Employer. It may be a similar activity that could be performed with your Employer or any other employer."

Although Dr. Jares and Dr. Duvall stated generally in narrative form that Frost could perform her own occupation, their more specific delineations of Frost's functional limitations established that she could not perform her job as operations manager for Wells Fargo. Specifically, Dr. Duvall reported that Frost "would not be able to do ... prolonged standing" and that she could stand for a maximum of four hours per day. Dr. Jares diagnosed Frost as being unable to stand for more than two hours per day and stated that she "should not drive." These limitations are incompatible with Frost's job as an operations manager, which required her to stand for a total of six hours per day, for as much as two hours at once, and to drive a forklift. MetLife argues that other operations manager jobs or similar jobs in the local economy may not entail similar standing and driving requirements. Because MetLife points to no evidence in the record supporting this argument, we reject it. We also reject MetLife's argument that Frost could perform her own occupation with a reasonable accommodation, because this construction of the plan is inconsistent with its plain language. *See Saffle v. Sierra Pac. Power Co.,* 85 F.3d 455, 459 (9th Cir.1996).

■ MetLife did not abuse its discretion in denying Frost benefits for the period in which the Plan provided disability benefits if "you are unable to earn more than 60% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified." MetLife's determination that there were gainful occupations for which Frost was reasonably qualified was supported by the reports of three medical experts: Drs. Jares, Duvall and Givens. In reaching this conclusion, we reject Frost's argument that MetLife's decision must be subjected to heightened scrutiny. As required by *Abatie,* 458 F.3d at 968, and *Metro. Life Ins. Co. v. Glenn,* — U.S. —, 128 S.Ct. 2343, 2346, 171 L.Ed.2d 299 (2008), the district court considered the structural conflict of interest created by MetLife's dual role as claims administrator and the plan's funding source as a factor in determining whether the administrator had abused its discretion in denying benefits. As explained below, the district court correctly considered the manner in which MetLife handled Frost's claim and did not err in concluding that the structural conflict of interest "should not be weighed heavily."

■ MetLife's support of Frost's efforts to obtain disability benefits from the Social Security Administration did not demonstrate any malice or self-dealing, because the Plan required Frost to apply for Social Security benefits and provided for offsets and reimbursement for overpayments in the event of an award. Nothing in the Plan indicated that MetLife was required to defer to the Social Security Administration's finding of disability. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831, 833, 123 S.Ct. 1965, 155 L.Ed.2d

1034 (2003) (noting different standards between the Social Security disability context and ERISA context).

■ Contrary to Frost's arguments, MetLife was not required to conduct an independent medical examination or to identify a change in circumstances justifying the termination of benefits. We also reject Frost's claim that MetLife failed to consider the effects of her medications. The record shows that Dr. Jares did consider the effect of her medications. MetLife was not required to have its consultants examine Frost or consult with her treating physicians. Nor was MetLife required to give greater weight to a treating physician than an examining physician. *Id.* at 831, 123 S.Ct. 1965. MetLife did not unfairly give greater weight to evidence that was unfavorable to Frost or ignore evidence that was favorable to her. The district court correctly determined that MetLife's experts were "not required to disregard the opinions of [Frost's] other doctors which were less than favorable to her, nor were they required to ignore the medical tests and evidence which contradicted [her] subjective complaints of pain and lack of cognitive ability." The record shows that many of Frost's own doctors believed there was a psychological component to her long list of symptoms, and several reports, such as those from Drs. Pai, Christine, Rivera, and Samatovicz, included findings that contradicted Frost's claims of cognitive dysfunction and weakness. MetLife did not abuse its discretion in considering or relying on such evidence.

"[I]f an administrator terminates continuing benefits as a result of arbitrary and capricious conduct, the claimant should continue receiving benefits until the administrator properly applies the plan's provisions." *Pannebecker v. Liberty Life Assurance Co.,* 542 F.3d 1213, 1221 (9th Cir.2008). Accordingly, Frost is entitled only to the benefits she was wrongly denied under the remainder of the plan's "Own Occupation" period. We therefore remand to the district court for a determination of those benefits.

**REVERSED AND REMANDED.**

CALLAHAN, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's decision in all respects but one. Because I believe that MetLife did not abuse its discretion in denying Frost benefits for the remainder of the 24–month period based on her ability to perform her "own occupation," I respectfully dissent.

The Plan's definition of "own occupation" is not limited to the Frost's "specific position," and may include "a similar activity that could be performed with [her] Employer or any other employer." Although Dr. Jares and Dr. Duvall checked boxes on a worksheet indicating functional limitations that were apparently incompatible with Frost's job as an operations manager, they do not necessarily preclude a finding that Frost could perform "similar activities." Further, nothing in the Plan appears to require MetLife to list the other "similar activities" Frost could perform either with her own or another employer.

Moreover, although the checked boxes, by themselves, seem to rule out Frost's specific job, the doctors' narrative opinions clearly indicate that she was capable of performing her "own occupation," and are well-supported by the record. Specifically, they rely on the findings and opinions of Frost's own doctors, including Drs. Pai, Christine, Rivera, and Samatovicz, which undermined Frost's alleged limitations and indicated the likelihood of a psychological component or cause to her long-list of symptoms.

In light of the Plan's broad definition of "own occupation," and substantial evidence supporting MetLife's determination, the minor discrepancy between the checked boxes and the well-supported narrative opinions does not amount to an abuse of discretion. *See Boyd v. Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir.2005) ("In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion."). Accordingly, I would affirm the denial of benefits for the remainder of the 24–month period governed by the Plan's "own occupation" standard.