**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2983
_____

STEVEN BLUMAN,
                                        Appellant

v.

PLAN ADMINISTRATOR AND TRUSTEES FOR CNA'S INTEGRATED
DISABILITY PROGRAM; CNA'S INTEGRATED DISABILITY PROGRAM;
CNA; XYZ CORP 1-10 and Individuals ABC 1-10 (all fictitious names and/or entities
who should be identified through discovery)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:08-cv-00415)
District Judge:   Honorable Garrett E. Brown, Jr.
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 13, 2012

Before:   McKEE, *Chief Judge*, FUENTES and COWEN, *Circuit Judges*

(Opinion filed: August 8, 2012)
_____

OPINION
_____

McKEE, *Chief Judge*.

Steven Bluman appeals from the District Court's grant of summary judgment in

favor of defendants on his claim under Section 502(a)(1)(B) of the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), for short-term disability benefits.    Although this is a very close case, based on our deferential standard of review, for the reasons set forth below, we conclude we must affirm.

I.

Because we write primarily for the parties, who are familiar with the background of this case, we discuss the events leading to this appeal only briefly.    In January 2000, Bluman was working as a computer programmer for Continental Casualty Company ("Continental") in Monmouth Junction, New Jersey, when he slipped and fell on ice in the parking lot.    In light of his injuries, Bluman obtained short-term disability benefits under the CNA Short Term Disability Plan ("the Plan").    The Plan, sponsored and administered by Continental's parent company, CNA Financial Corporation ("CNA"), was funded through the CNA Health Plan Trust, which in turn was funded by contributions from Continental.

Bluman returned to work in May 2000.    A year later, he was notified that he was going to be laid off in July 2001.    Two weeks before his termination date, he stopped working and again applied for short-term disability benefits under the Plan.    This time, however, his application was denied.    His administrative appeals were also unsuccessful.

Bluman later filed a complaint in the District Court against CNA and others ("Defendants"), challenging the denial of his application.    Thereafter, all parties moved for summary judgment.    The District Court granted Defendants' motion and denied

2

Bluman's motion.    This appeal followed.[1]

## II.

Where, as here, the disability plan gave the administrator discretionary authority to determine eligibility for benefits, we review the administrator's decision under an arbitrary and capricious standard.    *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009).    In conducting this review, we examine "various procedural factors underlying the administrator's decision-making process, as well as structural concerns regarding how the particular ERISA plan was funded."    *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011).    While "the structural inquiry focuses on the financial incentives created by the way the plan is organized, i.e., whether there is a conflict of interest, the procedural inquiry focuses on how the administrator treated the particular claimant."    *Id.* (internal quotation marks and citation omitted). We are not free to substitute our own judgment for that of the plan administrator, and we may overturn the administrator's decision "only if it is without reason, unsupported by

---

[1] The District Court had subject matter jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.    We have appellate jurisdiction under 28 U.S.C. § 1291.    "We exercise plenary review over the district court's grant of summary judgment, applying the same standard that the court should have applied."    *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010).    "Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."    *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc., Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).    "We may affirm the district court on any ground supported by the record."    *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

substantial evidence or erroneous as a matter of law." *Doroshow*, 574 F.3d at 234.

III.

We begin with the District Court's conclusion that CNA had no conflict of interest here. In *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008), the Supreme Court held that a conflict exists where the plan administrator both funds the plan and determines eligibility. In *Miller*, which we decided after the District Court's judgment, we held that, in light of *Glenn*, a conflict exists even where "an employer makes fixed contributions to a plan, evaluates claims, and pays claims through a trust." *Miller*, 632 F.3d at 847. Because the arrangement here was sufficiently similar to the one in *Miller*, we agree with Bluman that CNA did have a conflict of interest, and that this conflict should be considered in evaluating his ERISA claim. Nevertheless, for the reasons that follow, we need not disturb the District Court's decision.

Because a conflict of interest is "but one factor among many that a reviewing judge must take into account [when reviewing a plan administrator's decision]," *Glenn*, 554 U.S. at 116, this factor must not be given undue weight. *Funk v. CIGNA Group Ins.*, 648 F.3d 182, 190 (3d Cir. 2011). Although "*Glenn* directs a court to . . . afford that factor greater importance . . . where the evidence suggests a greater likelihood that it affected the decision to deny benefits," *Howley*, 625 F.3d at 794, that situation is not present here.[2]

---

[2] Bluman states that, in 2009, he "submitted a written request for additional discovery focusing on the conflict issue." (Bluman's Suppl. Br. 11.) Although he claims that

Nor is this a situation where the remaining factors — the "various procedural factors underlying the administrator's decision-making process," *Miller*, 632 F.3d at 845 — are so closely balanced that the conflict of interest factor tips the scale in favor of a conclusion that the plan administrator's decision was arbitrary and capricious. Rather, it appears from this record that the District Court was correct in concluding that Bluman's disability claim received a full and fair review.[3] Although he contends that CNA punished him for returning to work, and "cherry picked" and misrepresented the medical evidence to justify its denial of benefits, there is substantial evidence that CNA properly considered his application. In denying his final administrative appeal, CNA relied upon the written report of Dr. Gregory Arends, an independent physician who reviewed Bluman's medical records at CNA's request. Dr. Arends's report provided a detailed summary of those records and explained why, in his opinion, Bluman did not qualify for disability benefits.[4] While Dr. Arends's opinion diverged from the opinions of

---

Defendants failed to adequately respond to this request, it does not appear that he moved the District Court to compel Defendants to provide a more complete response.

[3] Bluman notes that, in July 2002, he was approved for Social Security disability benefits, and argues that this fact "must be considered[] in the context of evaluating his current claim for disability benefits." (Bluman's Suppl. Br. 15 n.2.) We find this argument unpersuasive. First, as Bluman concedes, "[i]t is unclear whether this fact was admitted into the record of the District Court." (*Id.*) Second, because his Social Security disability benefits were not awarded until *after* CNA had denied his final administrative appeal, CNA cannot be faulted for not considering this award in rendering its decision.

[4] Although Bluman claims that Dr. Arends ignored the results from an electromyogram ("EMG") of his upper extremities and certain findings from a radiologist's report, this medical evidence was indeed referenced in Dr. Arends's report. (*See* Suppl. App. at 144sa-45sa.) Furthermore, while Bluman argues that Dr. Arends mischaracterized a

5

Bluman's treating physicians, that professional disagreement did not prevent CNA from relying on Dr. Arends's report. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (holding that "plan administrators are not obliged to accord special deference to the opinions of treating physicians"); *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 258 (3d Cir. 2004) ("A professional disagreement does not amount to an arbitrary refusal to credit."). Nor has Bluman demonstrated that Dr. Arends (or another independent physician) should have examined Bluman instead of reviewing his medical records. *See Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 775 (7th Cir. 2010) (stating that "[a]n administrator may give weight to doctors who did only a records review") (citing *Nord*, 538 U.S. at 831).

We have considered Bluman's remaining arguments and find them unpersuasive. Because he has not established that the applicable factors collectively weigh in favor of a conclusion that CNA's denial of his application was arbitrary and capricious, we will affirm the District Court's grant of summary judgment in favor of Defendants.

---

finding from the radiologist's report, Bluman has not demonstrated that Dr. Arends's opinion hinged on this allegedly mischaracterized evidence. Indeed, Dr. Arends's opinion appeared to rely on a number of other findings as well, including the following: the August 2001 magnetic resonance imaging ("MRI") scan of Bluman's spine was "essentially unchanged" from the MRI conducted before Bluman returned to work in May 2000; the EMG studies were "inconsistent with [Bluman's] working diagnosis"; every examination that Dr. Arends reviewed "did not disclose any evidence of neurologic involvement on physical examination"; and "[r]epeated mention is made in every physical examination of [Bluman's] normal strength, normal sensation, and normal reflexes." (*Id.* at 146sa.)