McKEAGUE, Circuit Judge,
Dissenting.
I respectfully dissent because the record provides clear support for concluding that Niswonger did not prove an impairment rendering him disabled within the meaning of the plan. The majority of Niswonger’s treating physicians were unable to diagnose Niswonger’s symptoms, despite aggressive investigation and, as Dr. Ginn told Dr. Wager, without a definitive etiology, an opinion could not. be provided as to *324 Niswonger’s capacity for work. (See R. 12, Page ID # 442.)
Niswonger argues that because Dr. Wagshul diagnosed Niswonger with a pulmonary condition, Liberty should have ignored the inconclusive results of his other specialists. There are three problems with this argument: First, Dr. Wagshul admitted his diagnosis was preliminary. Dr. Wagshul only met Niswonger three times and, when asked if he was “clinically satisfied” with his diagnosis, Dr. Wagshul understandably explained, “Not yet. We are not three months into it.” {Id. at Page ID # 351-352.) Second, Dr. Wagshul admitted his pulmonary function data conflicted with Dr. Sood’s and when asked if there was enough “data there to determine anything,” Dr. Wagshul responded there was not. {Id. at Page ID # 368.) Third, Dr. Wagshul opined that Niswonger could not perform any occupation but, as the district court noted, that opinion was not specific to Niswonger but based on general observations about persons suffering Nis-wonger’s afflictions. (R. 23, Page ID # 2125-2126.)
Unlike the majority, I believe Dr. Brown sufficiently explained the reasons for his disagreement with Dr. Wagshul. Dr. Brown explained that the pulmonary function tests — Dr. Shah’s in 2008, Dr. Sood’s in 2010, Dr. Wagshul’s in 2012 — “produced variable and inconsistent results.” (R. 12, Page ID # 78.) The tests showed a steady increase in “total lung capacity” (from 51% to 61% to 89%) toward normal limits, while also showing a steady decrease in “forced expiratory volume” (from 70% to 56% to 32%) away from normal limits. The inconsistency of these results suggested to Dr. Brown that the data was “not useful” and that any diagnoses from the data would be suspect. {Id.)
The Supreme Court has made clear that courts may not “impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician’s evaluation.” Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Dr. Brown pointed to the inconsistency of the available pulmonary data and, in doing so, was crediting data that conflicted with Dr. Wager’s. Nevertheless, the majority deems Dr. Brown’s explanation to be lacking and treats Dr. Wager as being in diagnostic lockstep with Niswonger’s other treating pulmonologist, Dr. Sood. See Maj. Op. at 322. The issue, however, is not whether Niswonger had a pulmonary condition — on that point Dr. Sood and Dr. Wagshul agreed. The issue is whether that condition rendered Niswonger unable to perform the material and substantial duties of any occupation. On this point Dr. Sood’s and Dr. Wagshul’s opinions diverged, both as to the cause of the breathing problems and the severity of the condition.
Dr. Sood diagnosed Niswonger with obstructive lung disease but, unlike Dr. Wag-shul, did not think the disease explained the breathing problems inhibiting Niswon-ger’s work. Dr. Sood wrote that Niswon-ger’s pulmonary function tests “show[ed] obstructive physiology but did not explain the degree of dyspnea that he complains about and his cardiac echocardiogram was essentially normal.” (R. 12, PagelD # 415 (emphasis added).) Dr. Sood also wrote, “[Niswonger’s] test results were discussed with the patient and his wife. I suspect that most of these are related to a combination of things; his recent weight gain, his anxiety, and he does have obstructive lung disease.” {Id. (emphasis added)).
It was not arbitrary and capricious for Liberty to consider the totality of the evidence and decide that Dr. Wagshul’s preliminary diagnosis, inconclusive data, and generalized opinions were insufficient *325 proof of a disability rendering Niswonger unable to perform the material and substantial duties of any occupation. Liberty’s decision was especially reasonable given the inconsistency of the pulmonary function data, Dr. Sood’s finding that obstructive lung disease did not explain the severity of Niswonger’s breathing difficulty, and Dr. Brown’s independent review of the data in which he found the data inconclusive. Niswonger disagrees with how Liberty chose to weigh the evidence, but that does not mean Liberty weighed the evidence arbitrarily or capriciously. Because the administrative record is not devoid of support for Liberty’s position, and because there is a reasoned explanation for Liberty’s decision based on the record, I respectfully dissent.