**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2225

FREDRICK E. SMITH; BETH SMITH,

      Plaintiffs – Appellees,

   v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

      Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, Senior District Judge. (5:17-cv-00056-BR)

Argued: May 8, 2019                       Decided: June 20, 2019

Before GREGORY, Chief Judge, and WILKINSON and KEENAN, Circuit Judges.

Affirmed by unpublished opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Gregory and Judge Keenan joined.

Joshua Bachrach, WILSON ELSER MOSKOWITZ EDELMAN & DICKER, L.L.P., Philadelphia, Pennsylvania, for Appellant. John Stewart Butler, III, ANDERSON, JOHNSON, LAWRENCE & BUTLER, L.L.P., Fayetteville, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

In 2013, Fredrick Smith left a job he had held since the 1970s as a plant manager for Charles Craft, Inc. after suffering a series of strokes and heart problems. At first, Reliance Standard Life Insurance Co. paid disability benefits and waived his life insurance premium under a group policy it had with Charles Craft. But in 2016, in the face of contrary opinions by every treating physician to have evaluated him, Reliance determined that Smith was not totally disabled and insisted he find another job. Smith and his wife sued under the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking reinstatement of benefits. The district court granted summary judgment to the Smiths. For the reasons that follow, we affirm.

## I.

Smith's insurance and other benefits came through his employment with Charles Craft, which had group policies with Reliance. Two such policies are relevant here: a life insurance policy and a long-term disability plan. Each provides benefits if the worker becomes totally disabled. This case turns on whether Reliance abused its discretion in finding Smith no longer totally disabled in June 2016.

## A.

Though this case arises from a 2016 determination to end benefits, Smith's symptoms began far earlier, and drove him and his family from one specialist physician to another. In 2012 and 2013, Smith began having difficulty breathing. He suffered from high grade stenosis (narrowed blood vessels), hypertension, and diabetes. He suffered two strokes. In March 2013, he felt chest pain and rushed to the hospital where doctors

2

discovered serious coronary artery disease, the same illness his father died from at the age of 44. He received a triple bypass surgery but kept working part-time. After the surgery, his left hand often felt numb, as though it were freezing. His doctors soon insisted that he stop working altogether. Charles Craft, his employer, agreed, and even "refrained from contacting him when he might have been able to answer a question due to his experience" out of a concern that the stress would worsen his condition. J.A. 1441.

Smith applied for total disability benefits under his life insurance and long-term disability policies with Reliance in July 2013. On his application form, Dr. Stewart wrote that Smith's health problems were "work related," and came "from stress," J.A. 716, and that Smith could "<u>NEVER</u>" return to work. J.A. 717. The form asked how much the patient could lift; Dr. Stewart selected the lowest option, which, on Reliance's form, was "sedentary work." *Id.* Reliance granted Smith's application in August 2013.

At Reliance's suggestion, Smith applied for Social Security disability benefits in September. Dr. McGaffagan examined him and determined that he was entitled to disability benefits. These Social Security benefits reduced the amount Reliance was required to pay Smith under its long-term disability policy.

Smith's health troubles continued throughout 2014. In March, his doctors diagnosed new nerve problems, numbness, and neuropathy. The next month, his neurosurgeon, Dr. Haworth, noted slurred speech, a facial droop, poor balance, memory problems, and difficulty with stress. He concluded that Smith "had a stroke that has affected the entire left upper extremity" and that Smith's "vascular path retraction along the carotid arteries could pose some risk of further stroke." J.A. 1537.

3

Reliance required Smith's doctors to fill out continuing coverage forms, asking, among other things, on what date they expected him to no longer be "continuously totally disabled (unable to work)." In an April 2014 response, Dr. Husain refused to give a date, and instead wrote "permanently." J.A. 1500. Another of Smith's doctors, Dr. Hannan, sent Reliance medical records in May 2014 showing that Smith had a stroke sometime in March, and suffered from arteriosclerotic heart disease (hardened arteries) and stage three kidney disease. Dr. Hannan also refused to give a date when Smith would no longer be "continuously totally disabled," saying "permanently." J.A. 1540.

Around September, Dr. DePaola noted that Smith had hives and swelling after taking his diabetes medication. Smith visited an allergist, who was unable to help. The next April, Smith sent Reliance an update, listing his symptoms and seventeen medications he took. He said, "I never sleep more than 2 [hours] at a time." J.A. 1371. He frequently forgot things and was too ill to play golf.

B.

Reliance first decided to terminate benefits in August 2015. J.A. 356. It concluded that Smith was not totally disabled because he could perform sedentary work. The termination letter highlighted an April 2015 note from Dr. DePaola that said Smith "walks up to 40 miles without difficulty." J.A. 1396. Smith appealed. His appeal letter explained that the 40 miles Dr. DePaola said he could walk was cumulative from Christmas (when he received a Fitbit as a present) through his April doctor's visit. He also attached letters from his wife, his former employer, Dr. Hannan, and Dr. Husain. Both doctors opined that he was unable to work. In November, Reliance "determined that

4

[its] original decision should be reversed" and resumed paying benefits. J.A. 365. His kidney disease worsened. He required a urological stent procedure in late 2015 and developed kidney stones. Chest pain returned around this time, and he was hospitalized to have a drug-eluting stent placed into his heart. J.A. 446, 1462-63.

In April 2016, Reliance reversed course again, this time based mostly on notes from Dr. Klang, a heart specialist. Dr. Klang compiled notes for each visit that were "formatted using voice recognition software and therefore may contain unintended errors." *E.g.*, J.A. 493. Interspersed throughout Smith's treatment notes were generic positive statements, such as: "is doing well from a cardiac standpoint," J.A. 482; *see also* J.A. 484-88, or "blood pressure appears controlled" or "blood sugars are now significantly improved." J.A. 482. Reliance later focused on a note from December 2015, which contained this enigma: "remained active including hunting he is previously going on about 50-1/2 mild tracks but did tend to leave him sore lower extremity so he is Back but he can do 7 a half miles without problem." J.A. 489. A January note said Smith could "walk 8 miles without discomfort and hunt without difficulty." J.A. 494. These same notes described heart palpitations that felt like a "cell phone is going off in his left chest." J.A. 494. In May 2016, Smith underwent catheterization to place two heart stents.

Smith appealed the second termination of his benefits. This time, Reliance sent Smith's medical records to Dr. Weston to review. He tried, but failed, to contact each of Smith's doctors. Dr. Weston concluded that Smith's "prognosis is unclear," J.A. 618, and that Smith was disabled as of April 30. However, relying specifically on a June

5

echocardiogram and Dr. Klang's notes about hunting and walking, Dr. Weston's bottom line was that Smith was no longer disabled as of June 2016.

In September 2016, Reliance sent the letter that gave rise to this lawsuit, in which it rejected Smith's administrative appeal. Adopting Dr. Weston's recommendations, Reliance changed the termination date from April to June 2016. The letter acknowledged that the Social Security Administration had concluded that Smith was disabled, but noted that "the SSA may not have the results of Dr. Weston's review" and if it received a copy, it "may reach a similar conclusion." J.A. 401. Reliance maintains that this letter exhausted Smith's administrative remedies and closed the record.

Nonetheless, Smith requested reconsideration of this denial in October, and included with his request letters from his doctors. J.A. 687. Most relevant here, Dr. Klang's letter clarified that his notes about Smith's walking habits contained voice recognition software errors. The notes should have said Smith could walk about half a mile. Dr. Klang ended his letter by saying he believed Smith was totally disabled. J.A. 688. Reliance responded by pointing out that its policies allowed for only one appeal, which had been decided. Accordingly, the record was already closed. J.A. 403.

Smith filed suit in state court. Reliance removed the case to the Eastern District of North Carolina. Smith amended his complaint to plead a civil action under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). The district court granted Smith summary judgment, holding that Reliance abused its

discretion under the plans in finding he was not totally disabled.[1] The court faulted Dr. Weston for relying on Dr. Klang's typo-ridden notes and faulted Reliance for refusing to consider Dr. Klang's letter clarifying the number of miles Smith could walk. The district court found that Reliance ignored "a vast number of Fredrick Smith's records when performing its analysis." J.A. 1805. Reliance now appeals.

## II.

We review the district court's grant of summary judgment *de novo*. *See Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 20 (4th Cir. 2014). Where, as is true here, a plan grants "the administrator or fiduciary discretionary authority to determine eligibility," courts review for abuse of discretion under ERISA. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *see* J.A. 61 (long-term disability plan, providing that Reliance has "discretionary authority to interpret the Plan and the insurance policy to determine eligibility for benefits"). In reviewing a plan administrator's discretionary decision, our circuit uses the multi-factored test from *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000). Three factors are important here: the decision's evidentiary support, the decision's reasoning, and the administrator's conflict of interest. *See id.* (factors 3, 5, and 8).

We begin, as we must, with the terms of the plans. Under the long-term disability plan at issue here, Reliance pays "totally disabled" workers 60% of their previous salary.

---

[1] Because we hold that Reliance abused its discretion based solely on the administrative record, we need not decide the question of whether the district court erred in considering Dr. Klang's letter to Reliance that came after the record was closed.

7

J.A. 57. After the first two years of illness, a worker is "totally disabled" if he "cannot perform the material duties of any occupation." *Id.* The term "any occupation" means one "that the Insured's education, training or experience will reasonably allow." *Id.*[2] Similarly, Smith's life insurance policy waives premium payments while a worker is totally disabled. That policy defines "total disability" as "an Insured's complete inability to engage in any type of work for wage or profit for which he/she is suited by education, training or experience." J.A. 1573. The parties have treated these definitions in the two plans interchangeably.

Our review of the record persuades us, as it did the district court, that Reliance abused its discretion in concluding that Smith could work full-time in a sedentary job. Reliance agrees that Smith is too ill to return to his job at Charles Craft, but maintains that a job with less lifting and stooping than a plant manager would suit him. This view defies belief. Drs. Stewart and Haworth said Smith's health problems related to stress. J.A. 716, 1536. He had multiple strokes, multiple stents for his heart, kidney disease, a urological stent, hypertension, a triple bypass surgery, diabetes, nerve damage, and a host of other maladies. Every doctor that examined him told Reliance he would never be able to work. J.A. 717 (Dr. Stewart says Smith could "<u>NEVER</u>" work); J.A. 1327 (Dr. McGaffagan); J.A. 1500 (Dr. Husain says Smith is totally disabled "permanently"); J.A.

---

[2] For two years, a worker is "totally disabled" if he "cannot perform the material duties of his/her *regular occupation*." J.A. 57. Reliance initially terminated Smith's benefits after two years when the stricter "any occupation" definition came into effect, but all parties now agree Smith met the stricter definition from August 2015 until June 2016.

1540 (Dr. Hannan, same). This record evidence shows that Smith has carried his burden to show an abuse of discretion.

To be sure, plan administrators need not accord treating physicians controlling deference in the face of contrary evidence. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (rejecting the "treating physician rule" for ERISA claims). Still, administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* Here, moreover, Reliance both determines eligibility and pays benefits. The Supreme Court has explained that "a reviewing court should consider [a conflict of interest] as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." *Glenn*, 554 U.S. at 108.

In contending Smith was not disabled, Reliance highlights his hunting activities. App. Br. at 29. To the extent this hobby matters at all, it supports Smith. Every reference to hunting comes during a period when all agree Smith was totally disabled. J.A. 1558 (November, 2014); J.A. 489 (December, 2015); J.A. 161 (January, 2016); J.A. 233 (February, 2016). Reliance contends that Smith improved by June 2016, but in June Dr. Klang wrote that Smith "has not been hunting recently" and reported "decreased functional capacity now." J.A. 593. Moreover, Smith felt worse and stopped hunting in the very month Reliance claims he recovered.

Next, Reliance looks to the references to Smith's supposed ability to walk long distances. Dr. DePaola's notes from April 2015 say Smith "walks up to 40 miles without

9

difficulty." J.A. 1396. Even if this meant 40 miles per week, it is hard to see how that supports the conclusion that he was no longer totally disabled 14 months later. But there is reason to think it did not mean 40 miles per week, since Smith explained that this number was the *cumulative* distance he had walked since Christmas four months before. J.A. 1435. Reliance's consultant, Dr. Weston, had access to this explanation. J.A. 614 (listing "appeal letters"). An insurance company need not credit every stray comment, but here neither Dr. Weston nor Reliance even mentioned Smith's explanation, much less explained why their time frame was more likely the correct one.

Beyond the physical activities, Reliance points to a number of mitigating notes in the medical records. Each doctor at various times made generic statements that Smith "is doing well." *E.g.*, J.A. 1349. After reviewing the context for each of these, we agree with the district court that they are little more than boilerplate. These same comments appear when the notes detail the sixteen or more medications Smith was taking. Doctors, like everyone else, make statements relative to a baseline, and Smith perhaps was better or "doing well" for someone with many serious underlying health problems.

Some of the positive notes are more specific, such as those relating to Smith's echocardiogram and those referencing his blood sugar and hypertension as being under control. While these indicate some level of improvement, they cannot outweigh the opinions of the doctors who saw him, and the illnesses that remained constant throughout this period. Smith's health has had many ups and downs. Focusing on one small upswing is unreasonable unless the recovery is sufficiently substantial that one would not expect more problems if he returned to work. It was not error for the district court to adopt the

10

commonsensical observation of Dr. Stewart that the stress of working would risk undoing whatever progress Smith has made.

At argument, Reliance came close to asserting that Smith needed to prove that he could not perform sedentary work due to a physical limitation on, for example, sitting, typing, or speaking. This is quite a high standard. Such a rule would erase disability eligibility for all but the bedridden. Some serious diseases are debilitating because of their effect on the mind or because they worsen with stress. This is a place for medical judgment, not per se rules: "The rule is one of reason." *Harrison*, 773 F.3d at 22. The only doctor who believed Smith was not disabled was Dr. Weston, whom Reliance hired to review Smith's file. He neither examined Smith nor spoke with his doctors, and he believed Smith's "prognosis is unclear." J.A. 618. A hired consultant's lone view cannot immunize Reliance. Were the evidence more balanced, his review could make a difference, but it is a pillar too weak to support the decision here.

Against a gale of medical opinion and considerable evidence, Reliance sought shelter in opaque statements from medical records. The sheer mass of the health problems Smith suffered rendered him eligible for long-term disability benefits as defined by the terms of the plans. To repeat: Smith had a triple bypass surgery, diabetes, nerve damage, arteries that were narrowed and hardened, multiple strokes, and multiple stents for his heart and kidneys. The Social Security Administration and all of his doctors uniformly concluded that he was unable to work. Reliance abused its discretion in denying him benefits, and the district court's judgment in reinstating those benefits is hereby

*AFFIRMED.*

11