Joanne **CULLEY**

v.

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,** Appellant.

No. 07–3952.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 19, 2008.

Filed: July 20, 2009.

David M. Foley, Esq., Jay Holub, Esq., Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, North Brunswick, NJ, for Joanne Culley.

Patricia A. Smith, Esq., Jennifer L. Sova, Esq., Ballard, Spahr, Andrews & Ingersoll, Voorhees, NJ, for Appellant.

Before: BARRY and CHAGARES, Circuit Judges, and COHILL, District Judge *.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

This is an appeal from the denial of long term disability ("LTD") benefits. Joanne Culley claimed she was entitled to LTD benefits pursuant to a group long-term disability plan sponsored by John Wiley & Sons ("John Wiley"), and insured and administered by defendant Liberty Life Assurance Company of Boston ("Liberty") under a Group Disability Income Policy ("LTD Policy"). Liberty denied Culley LTD benefits, and, after exhausting her administrative appeals, Culley filed suit in the District Court. The District Court reversed the determination of the administrator, and granted Culley summary judgment. We will affirm.

## I.

Because we write solely for the parties, we recite only those facts essential to our determination.

Culley was formerly employed with John Wiley as an order-processing manager, a position that primarily involved sitting for eight to nine hours per day, using the telephone and computer. Liberty, also the claims administrator and insurer of John Wiley's statutory short-term disability plan ("STD Plan"), approved and paid Culley short-term disability benefits after Culley complained of back pain, and received an initial diagnosis indicating certain spine and disc deformities. Following the STD Plan period, Culley applied for LTD benefits.

Under the LTD Policy, Liberty is vested with the authority, in its sole discretion, to construe its terms and to determine benefit eligibility. In addition, pursuant to the terms of the policy, Liberty's interpretations and decisions are "conclusive and binding." In relevant part, in order to be eligible to receive LTD benefits, a claimant is required to provide Liberty with proof of continued disability. Under the LTD Policy, "disability" means that, during the contractual 180–day elimination period, and for the first twenty-four month period for which benefits are sought, the Covered Person is unable to perform all of the "Material and Substantial Duties" of her "Own Occupation," as a result of injury or sickness, as those terms are defined in the LTD Policy. Liberty will continue to pay benefits if the Covered Person provides, at Liberty's request, proof of, inter alia, continued disability. Liberty maintains discretion to terminate benefits if the disability ends.

Liberty approved and paid Culley benefits under the LTD Policy through August 28, 2003. Liberty later reversed its initial decision and discontinued paying Culley LTD benefits, claiming that she failed to present objective evidence that she remained unable to perform the duties of her own occupation.

* The Honorable Maurice Cohill, Jr., Senior District Judge for the United States District Court for the Western District of Pennsylvania, sitting by designation.

Culley exhausted her administrative appeals, and filed suit against Liberty in the United States District Court for the District of New Jersey. In the District Court, Culley and Liberty cross-moved for summary judgment. On September 21, 2007, the District Court granted Culley's motion for summary judgment and denied Liberty's motion. On appeal, Liberty argues that the District Court erred in applying what it termed an "elevated heightened arbitrary and capricious standard of review," and that substantial evidence in the record supported Liberty's decision to deny Culley LTD benefits.

The District Court had jurisdiction over this case pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331. We have jurisdiction over the appeal under 28 U.S.C. § 1291. We exercise plenary review over summary judgment decisions. *See Elsmere Park Club, L.P. v. Town of Elsmere,* 542 F.3d 412, 416 (3d Cir.2008).

## II.

The plan in this case grants Liberty discretion to determine benefits or to construe the terms of a benefit plan. Appendix (App.) 29, 76. Under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), if the ERISA plan gives the administrator such discretion, a court reviews the administrator's decision for abuse of discretion. The Court in *Firestone* further held that if the administrator or fiduciary having discretion "is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." 489 U.S. at 115, 109 S.Ct. 948. The Court suggested in *Firestone* that such a conflict exists where the employer both funds the plan and evaluates the claims. *Id.*

In our previous jurisprudence, we had instructed the district courts to apply a "heightened standard of review" or "heightened scrutiny" in such cases. *See Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 383, 387 (3d Cir.2000). This precedent provided that, where the administrator was operating under a conflict of interest, the court would apply a "sliding scale" to give the administrator's decision less deference as the severity of the conflict of interest increased. *Id.* at 393; *see Post v. Hartford Ins. Co.,* 501 F.3d 154, 161 (3d Cir.2007). Under this standard, "if the level of conflict is slight, most of the administrator's deference remains intact, and the court applies something similar to traditional arbitrary and capricious review; conversely, if the level of conflict is high, then most of its discretion is stripped away." *Post,* 501 F.3d at 161.

The District Court held that a heightened arbitrary and capricious standard of review was appropriate because Liberty both funds and administers John Wiley's LTD benefits. The District Court explained that the heightened arbitrary and capricious standard "is a sliding · scale, which courts may rachet up depending upon the level of conflict or bias demonstrated within the record." *Culley v. Liberty Life Assurance Co.,* Civ. No. 05–2279(AET), 2007 WL 2769649, at *4 (D.N.J. Sept.21, 2007). The Court then held that "an elevated arbitrary and capricious standard of review" was warranted because "Plaintiff has demonstrated several procedural irregularities." *Id.* Under this standard, the District Court held that Liberty did not properly exercise its discretion, and granted summary judgment in favor of Culley.

Since the District Court decision, however, the Supreme Court provided guidance as to how courts should approach potential conflicts of interest. *See Metro. Life Ins. Co. v. Glenn,* —— U.S. ——, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). In *Glenn,* the Court held that a conflict of interest exists

under *Firestone* where, as here, the administrator having discretion is an insurance company that both evaluates and pays benefits under the plan. *Id.* at *2349–50. Further, the Court observed that such a potential conflict of interest should constitute just one factor in evaluating whether there was an abuse of discretion in the decision-making process, but should not trigger a change in the standard of review. *Id.* at *2350–53. Thus, under *Glenn,* a plan administrator's conflict of interest would not give rise to a "heightened" version of the arbitrary and capricious standard, but would be one of several factors for the district court to consider in determining whether the administrator abused its discretion. *Id.* at *2351 ("We believe that *Firestone* means what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one."); *see Estate of Schwing v. The Lilly Health Plan,* 562 F.3d 522, 525–26 (3d Cir.2009).

We nonetheless conclude that the District Court's decision survives *Glenn.* As in *Glenn,* the record "says little about [Liberty's] efforts to assure accurate claims assessment." *Id.* at *2351. Also as in *Glenn,* the court gave the conflict some weight, but was clear that it did not find the conflict alone determinative. The District Court determined that Liberty abused its discretion based on its finding of "several procedural irregularities," taken together with the potential structural conflict. *Culley,* 2007 WL 2769649, at *5. This determination is consistent with the guidance issued by the Court in *Glenn,* namely, for "judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a re-

sult by weighing all together," and that a conflict of interest "should prove more important ... where circumstances suggest a higher likelihood that it affected the benefits decision." *Glenn,* 128 S.Ct. at *2351.

### III.

The District Court found four aspects of the review process that appeared irregular. First, the District Court noted that Liberty classified Culley's job activity level as sedentary, based upon an outdated U.S. Department of Labor listing. The District Court considered this classification a procedural irregularity because Liberty did so despite a recommendation from its vocational case manager that Liberty should "consider a referral for a complete [VCM] file review to determine if further investigation, including, but not limited to, a Labor Market Survey is needed" to classify properly Culley's job. Nothing in this determination gives this Court reason to "doubt [Liberty's] fiduciary neutrality." *See Post,* 501 F.3d at 165. Culley never challenged this classification or description of her job duties during the administrative appeals process. The sedentary classification, moreover, is consistent with Culley's own description of those duties and with the U.S. Department of Labor classification of Culley's position. In the absence of contrary evidence suggesting otherwise, Liberty's decision not to "consider" additional review of Culley's position is not the type of procedural irregularity that would raise suspicion.[2]

Other aspects of Liberty's review process cause greater concern. Liberty terminated Culley's benefits following a paper review of Culley's file by Dr. Anthony Parisi, Liberty Mutual's Consulting Physician ("LMCP"). While "ERISA does not

---

**2.** The District Court found, however, that the characterization of Culley's job as sedentary "is not vital to the disposition of the cross motions for summary judgment" and did not further address the issue.

require that plan administrators give the opinions of treating physicians special weight, courts must still consider the circumstances that surround an administrator ordering a paper review." *Post,* 501 F.3d at 166 (citing *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 833–34, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)). In his review, Dr. Parisi found that the 2003 MRI confirmed the diagnosis of Dr. Sharon Worosilo, Culley's pain management specialist, showing "moderate cervical spondylosis" and "degenerative disease of her spine." Dr. Worosilo found that, while Culley responded well to the epidural injections to her neck, the injections proved unsuccessful in alleviating any of Culley's pain or improving function in her lumbar region.

Despite these findings, Dr. Parisi concluded that, based upon the evidence submitted to him, Culley's impairments supported only "mild restrictions and limitations" on her ability to perform her job. However, Dr. Parisi also noted that "the details" of Culley's compression fractures of the lower thoracic spine were not available to him in rendering his opinion, and that "the exact level of functionality is unclear." As such, Dr. Parisi suggested that "if a more specific evaluation of [Culley's] functioning is needed, a period of activity observations could be considered." Liberty did not undertake further observation.

Liberty argues that it was under no obligation to surveil Culley. Liberty maintains that surveillance is an "aggressive tactic" that itself may constitute procedural irregularity demonstrating bias. *See, e.g., Post,* 501 F.3d at 167. Liberty is correct that this Court does not impose an obligation on administrators, as a matter of course, to engage in surveillance. However, even absent such an obligation, reliance on Dr. Parisi's conclusions was unreasonable. Primarily, we note that, at the

time of the review, the overwhelming weight of evidence in Culley's record counseled in her favor. Liberty nevertheless relied upon Dr. Parisi's assessment of Culley's level of functionality in denying benefits, despite Dr. Parisi's own concession that, based upon the records reviewed, "the exact level of functionality is unclear." Moreover, Dr. Parisi's assessments were based solely on his review of Culley's lumbar and cervical records; Parisi did not address the ailments for which Culley was originally diagnosed, including post-compression fractures of the thoracic region and advanced osteoporosis, and the impact of those injuries on her functional capacity.

In addition, in September 2003, after Liberty cancelled Culley's LTD benefits, Liberty's Nurse Case Manager ("NCM"), Christine Piechowiak, reviewed Culley's medical records and indicated an inconsistency in the findings of Dr. Parisi and those of Culley's treating physician, who suspected herniated nucleus pulposus of the cervical and lumbar spine. NCM Piechowiak concluded that, if present, a herniated disc "may impede prolonged standing and prolonged sitting activities." App. 628. Piechowiak continued,

**It is not clear if the R/L for no sitting >20 minutes would be a reasonable restriction or not, therefore, would recommend either another LMCP review w/provider contact or peer review w/provider contact to clarify the diagnostic entity present and then the R/L associated w/this diagnosis.**

*Id.* The District Court found that Liberty's decision not to conduct another consultant review or peer review at this point constituted further evidence of a review process that "disfavor[ed] the claimant at each crossroads." *Culley,* 2007 WL 2769649, at *5 (quotation omitted).

Liberty contends that it was under no obligation to conduct any investigation,

peer review or otherwise. According to Liberty, Culley bears the burden to provide evidence of continued disability. This Court may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker*, 538 U.S. at 834, 123 S.Ct. 1965. Here, however, Liberty's NCM suggested that the paper review conducted by Dr. Parisi may not have revealed the extent of injury diagnosed by physical examination.

While Liberty may freely rely on its consultants, without giving special deference to the views of treating physicians, neither may it turn a blind eye to faults in the evidence supporting its consultants' opinions. Here, Liberty, operating under a potential conflict of interest, made decisions that disfavored the claimant at each "crossroads," and relied on expert opinions predicated on incomplete medical files. Although a reviewing Court is not free to substitute its own judgment for that of the administrator, we conclude that Liberty's actions in this instance constituted an abuse of discretion.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.