NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No. 09-2710
_____


THOMAS M. HINKLE,
Administrator of the Estate of MARY ANNE HINKLE,
deceased; and THOMAS M. HINKLE, in his own right,
Appellant,

v.

ASSURANT, INC.;
ASSURANT EMPLOYEE BENEFITS;
and UNION SECURITY INSURANCE COMPANY,


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 08-CV-04124
District Judge: Judge John P. Fullam
_____

Argued May 27, 2010

Before: McKEE, *Chief Judge*, RENDELL
and STAPLETON, *Circuit Judges*.

(Opinion Filed:August 12, 2010)
_____

OPINION
_____

Argued for Appellant
Robert E. Slota, Jr., Esq.
Hamburg, Rubin, Mullin, Maxwell & Lupin
375 Morris Road
P.O. Box 1479
Lansdale, PA 19446-0773

Argued for Appellee
Joshua Bachrach, Esq.
Wilson, Elser, Moskowitz, Edelman
 & Dicker
601 Walnut Street
The Curtis Center, Suite 1130 East
Independence Square West
Philadelphia, PA 19106-0000

McKEE, *Chief Judge*.

Plaintiff Thomas M. Hinkle appeals the district court's order granting Defendants' motion for summary judgment on his claim for benefits under Defendants' Accidental Death & Dismemberment Plan ("AD&D Plan"). Plaintiff argues that the district court erred by not reviewing Defendants' denial of benefits under a heightened standard of review. Plaintiff further argues that even under arbitrary and capricious review, Defendants failed to show the absence of a genuine issue of material fact as to whether their reasons for denying his claim were unreasonable. We will affirm.

## I.

We write primarily for the parties and therefore need not set forth the events underlying this suit in detail.[1] In summary, Plaintiff was his sister's beneficiary under the AD&D Plan. When an abdominal scan revealed a potentially cancerous cyst on her kidney, Ms. Hinkle agreed to have the kidney surgically removed. JA 103-04. Ms. Hinkle subsequently died as the result of a surgical error during that procedure. That

---

[1] The facts are uncontested unless otherwise noted.

2

tragedy was compounded by the cruelest of ironies; the cyst was determined to be benign. JA 104.

Plaintiff thereafter sought benefits under the AD&D Plan, but Defendants denied his claim at three different levels of administrative review. At the first two levels, Defendants focused on the fact that Ms. Hinkle's death had been indirectly caused by physical disease.[2] JA 97; JA 102. At the final level, Defendants denied his claim because they concluded that Ms. Hinkle's death had been caused by medical error and was therefore not "accidental" under the policy. In the alternative, Defendants concluded that her death was indirectly caused by physical disease. JA 91-92.

Plaintiff subsequently filed this suit for benefits under the Employee Retirement Income Security Act ("ERISA"), and the parties cross-moved for summary judgment. The court reluctantly granted Defendants' motion. In doing so, it noted that it would have reversed Defendants' denial of Plaintiff's claim under a less deferential standard of review, but was compelled under arbitrary and capricious review to enter judgment in favor of Defendants, as the record did not establish that the denial was unreasonable. This appeal followed.

## II.

The district court had subject matter jurisdiction under 29 U.S.C. § 1132(e)(1) and

---

[2] Defendants insist that their rationale for denying Plaintiff's claim was consistent at each level of review. For the purposes of summary judgment, where we construe all facts and draw all reasonable inferences in Plaintiff's favor, we adopt Plaintiff's characterization of the rationales as inconsistent.

28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the district court's grant of summary judgment, applying the same standard that the court should have applied. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health and Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002). Summary judgment is appropriate if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Under 29 U.S.C. § 1132(a)(1)(B), a participant in an ERISA benefit plan denied benefits by the plan administrator may sue in federal court "to recover benefits due to him under the terms of his plan." "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When discretionary authority is lodged with the administrator, the court reviews only for abuse of that discretion. "Of course, if a benefit plan gives discretion to an administrator . . . who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"[3] *Id.* (citing Restatement

[3] It is uncontested here that Defendants had discretion to interpret the terms of the AD&D Plan, and that because they both evaluated claims and paid benefits, they operated under a conflict of interest.

4

(Second) of Trusts § 187, Comment *d* (1959)). An administrator's decision constitutes an abuse of discretion only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (internal quotations marks and citations omitted).

## III.

### A.

Plaintiff first argues that the district court should have applied a heightened standard of review because Defendants were operating under a conflict of interest. This argument ignores the Supreme Court's recent decision in *Metropolitan Life Insurance Co. v. Glenn*, 128 S.Ct. 2343 (2008). Before *Glenn*, several Circuit Courts of Appeals, including ours, had interpreted *Firestone* to mean that courts should review eligibility decisions made by conflicted administrators under a heightened standard of review, pursuant to which, scrutiny increased with the extent of the conflict. *See, e.g.*, *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 392 (3d Cir. 2000). In *Glenn*, however, the Supreme Court clarified its prior holding in *Firestone*, and explained that the existence of a conflict of interest does not raise the standard of review, but is merely one factor that courts must consider when reviewing a denial of benefits. 128 S.Ct. at 2351. Thereafter, in *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009), we acknowledged that the sliding scale approach that we had previously employed to review denials of benefits, the same sliding scale upon which Plaintiff's argument relies,

5

was no longer valid.

Nonetheless, we do believe that the district court should have acknowledged Defendants' conflict of interest in reviewing the decision to deny benefits. "[C]onflicts are . . . one factor among many that a reviewing judge *must* take into account." *See Glenn*, 128 S.Ct. at 2351 (emphasis added). Accordingly, we will take the conflict of interest into account as a factor. However, even when the conflict is considered, we cannot conclude that the record establishes that the decision to deny benefits was arbitrary or capricious.[4]

**B.**

Plaintiff argues that even under arbitrary and capricious review, Defendants have not established the absence of a genuine issue of material fact as to whether their reasons for denying his claim were unreasonable. We disagree.

Defendants ultimately denied Plaintiff's claim for two reasons: first, because death resulting from medical error is not "accidental"; and second, because Ms. Hinkle's death indirectly resulted from physical disease, and was thus excluded from coverage by the

---

[4] Moreover, we reach the same result even if we accord the conflict greater significance than other factors, *see Glenn*, 128 S.Ct. at 2351 (a conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision"), in light of Defendants' inconsistent rationales at the different levels of administrative review, *see, e.g.*, *Nord v. Black & Decker Disability Plan*, 296 F.3d 823, 829 (9th Cir. 2000) ("material, probative evidence of a conflict may consist of inconsistencies in the plan administrator's reasons"), *rev'd on other grounds*, 538 U.S. 822 (2003); *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 798 (9th Cir. 1997) (inconsistencies in an administrator's position are "an indication that the insurer's decision may have been tainted by self-interest.").

AD&D Plan's physical disease exclusion.

As the district court properly noted, there is currently a split among the Circuit Courts of Appeals as to whether death due to medical error constitutes accidental death for the purposes of an accidental death insurance policy. *Compare Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1051-52 (7th Cir. 1991) ("Any time one undergoes a medical procedure there is a risk that the procedure will inflict an injury . . . . [Such] injuries are accidental in the sense of unintended and infrequent. But they are not 'accidents' as the term is used in insurance policies for accidental injuries.") *with Whetsell v. Mutual Life Ins. Co.*, 669 F.2d 955, 957 (4th Cir. 1982) ("An accident is an unintended occurrence. If such happens during medical treatment, it is still an accident[.]").

The district court therefore properly held that "where the courts of appeals are in disagreement on an issue, a decision one way or another cannot be regarded as arbitrary or capricious." JA 7. Although this may not always be true, we think it true here. Under *Senkier*, a death resulting from medical error, although "accidental" under certain technical approaches, is not an "accidental death" as the ordinary person would understand that phrase in the context of an accidental death insurance policy. Regardless of whether we agree with *Senkier's* analysis, it is, at minimum, reasonable, and therefore supports Defendants' denial of Plaintiff's claim.

7

Plaintiff also argues that a benign kidney cyst is not a "disease."[5] The definition of "disease" Plaintiff proffers in support of that argument turns on whether an abnormality "impairs normal functioning." Plaintiff thus argues that there is no evidence that Ms. Hinkle's benign cyst in any way affected her functioning. Appellant's Br. 16. Another court, however, has defined "disease" in this same context to mean simply "an aberration from the normal condition of the body." *See Miller v. Hartford Life Ins. Co.*, 348 F. Supp. 2d 815, 821 (E.D. Mich. 2004). Here again, the correct definition is irrelevant. Rather, our inquiry must focus on whether Defendants' interpretation of "disease" is reasonable. Although the accuracy of *Miller's* approach to defining "disease" can be debated, Defendants' decision that Ms. Hinkle's cyst was a "disease" is certainly not unreasonable.[6]

**IV.**

For the foregoing reasons, we will affirm the district court's order granting Defendants' motion for summary judgment.

---

[5] As we have concluded that one of Defendants' reasons for denying Plaintiff's claim is reasonable, we need not consider the reasonableness of the second reason. However, we do so for the sake of thoroughness.

[6] Plaintiff also argues that the physical disease exclusion applies only to accidental dismemberment, and not to accidental death. This argument is entirely without merit.