[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14693
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 21, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:09-cv-00238-KOB

MYRA RAY,

Plaintiff -
Counter-Defendant -
Appellant,

versus

SUN LIFE & HEALTH INSURANCE COMPANY,

Defendant -
Counter-Claimant -
Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 21, 2011)

Before EDMONDSON, HULL, and MARTIN, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Myra Ray appeals the district court's decision affirming the termination of her long-term disability benefits. No reversible error has been shown; we affirm.

Through her employer, Ray was covered under a long-term group disability plan insured by Defendant-Appellee Sun Life and Health Insurance Company ("Sun Life"). The ERISA plan document provided that GE Group Life Assurance Company[1] was the claims fiduciary and broadly granted the claims fiduciary discretionary authority to make all claim, eligibility and other administrative decisions. The claims fiduciary was granted sole and exclusive discretion and authority to carry out all acts involving claims, and its findings and decisions on claims were not to be disturbed unless the claims fiduciary acted in an arbitrary and capricious manner.[2]

Before claiming disability, Ray was a senior executive with a long-time work history with her employer. In September 2005, Ray claimed that she had

---

[1]The policy was issued by GE Group Life Assurance Company. GE Group Life Assurance Company changed its name to Phoenix Life Insurance Company and Phoenix Life Insurance Company changed its name to Genworth Life and Health Insurance Company. Genworth Life and Health Insurance Company changed its name to that of the Defendant, Sun Life and Health Insurance Company.

[2]Ray disputes that Sun Life was granted discretion under the plan. Ray argues that a change of ownership of Genworth Life and Health Insurance Company accompanied the latter's change of name to that of Sun Life. But Ray offers nothing to dispute that the entity first known as GE Group Life Assurance Company is the same entity now known as Sun Life. The district court concluded correctly that Sun Life has discretion under the plan.

become disabled as a result of a heart condition. In support of her claim, Ray submitted a statement from her treating cardiologist, Dr. Bourge, that indicated her heart condition limited completely her ability to work. Ray's claim for long-term disability benefits was approved, but she was advised that periodic medical updates would be required to verify that she remained totally disabled.

Dr. Bourge confirmed Ray's disability in statements sent to Sun Life in 2006 through 2008. But, as the district court set out in its opinion, Dr. Bourge's office notes often were inconsistent with the disability statements submitted to Sun Life; the office notes suggested that Ray's condition was much improved, that she suffered far fewer symptoms than was represented to Sun Life, and that she was capable of -- and engaged in -- much more activity than the disability statements disclosed. Sun Life ordered surveillance of Ray's activities on two dates in the spring of 2008. The surveillance videos showed Ray engaged in activities with a fluidity of movement, without need of assistance, and without apparent effort. The video contradicted Dr. Bourge's representations of Ray's limitations in the disability statements he submitted to Sun Life.

Sun Life engaged Dr. Eaton, an independent medical consultant with credentials comparable to those of Dr. Bourge, to evaluate Ray's medical records and the surveillance information. On the basis of those medical records (including

Dr. Bourge's office notes) and the surveillance tapes, Dr. Eaton concluded that Ray was capable of returning to her own occupation. Dr. Eaton performed no physical examination of Ray.

Based on Ray's medical records, the surveillance tapes, and Dr. Eaton's independent evaluation, Sun Life notified Ray that her disability benefits would be discontinued 31 May 2008. Ray appealed that determination. While Ray's disability termination was on administrative appeal, the Social Security Administration ("SSA") awarded Ray social security benefits. Dr. Anderson, a heart specialist and SSA consultant, testified at the SSA hearing that her treating physician classified her condition as incompatible with gainful employment. According to the SSA benefits award letter, Ray's medical records support and confirm Dr. Anderson's testimony. Ray submitted the SSA award information to Sun Life for consideration during the appeal process. Ray also submitted a SSA questionnaire completed by Dr. Bourge stating that Ray was permanently disabled.

During the pendency of the administrative appeal, Sun Life engaged a second independent non-examining medical reviewer, Dr. Rosenberg, to assess Ray's claim. Based on Rays medical records (which included the results of certain clinical tests) and the surveillance videos, Dr. Rosenberg disagreed with Dr. Bourge's categorization of Ray's functional limitations. Instead, Dr. Rosenberg

concluded that Ray was capable of light and sedentary work; she was capable of returning to work at her own occupation. Sun Life provided Ray with a copy of Dr. Rosenberg's report and offered her additional time to submit information to counter Dr. Rosenberg's conclusion. No additional information was submitted.

Upon review of Ray's entire claim file, Sun Life determined that Ray "has the capacity to perform a sedentary to light occupation" and that she is not totally disabled from the position she held with her employer before she filed for disability, a position that falls within the sedentary to light category. Sun Life acknowledged its receipt and consideration of the SSA's decision to grant disability but advised that it was not bound by that decision, that the SSA may not have had all of the information Sun Life had, and that eligibility under the plan was dependant on the specific terms of the policy. Ray brought this ERISA action to challenge Sun Life's termination of her disability benefits.

ERISA itself provides no standard for review of the benefits decision of plan administrators. Firestone Tire and Rubber Co., v. Bruch, 109 S.Ct. 948, 953 (1989). Based on Supreme Court guidance in Firestone and Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343 (2008), we have established a multi-step framework for review of ERISA benefit decisions:

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the admininstrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Blankenship v. Metropolitan Life Insur. Co., 644 F.3d 1350, 1355 (11th Cir. 2011).

The district court applied properly this framework.

The district court first concluded that Sun Life's decision to terminate benefits was not de novo wrong. The terms of the plan define totally disabled as "unable to perform all the material and substantial duties of your regular occupation." Ray argues the medical records and opinions of her treating physician (confirmed by her social security benefits award) establish her disability. But, as

6

the district court fully set out, other documents in the record contradict Dr. Bourge's assessment; and, in fact, Dr. Bourge's own office records and opinions are inconsistent internally and inconsistent with his conclusion that Ray is permanently disabled. These inconsistencies cast doubt upon the reliability of Dr. Bourge's assessment of the severity of Ray's condition. Dr. Bourge's conclusion of total disability was contrary to the assessments of the two non-examining medical experts who reviewed Ray's medical history and the surveillance tapes; these experts both opined that Ray was capable of returning to her own occupation.

No special weight is to be accorded the opinion of a treating physician. See Black & Decker Disability Plan v. Nord, 123 S.Ct. 1965, 1970-72 (2003). And while approval of social security benefits may be considered, it is not conclusive on whether a claimant is also disabled under the terms of an ERISA plan. See Whatley v. CNA Ins. Companies, 189 F.3d 1310, 1314 n.8 (11th Cir. 1999). Based on the administrative record available to Sun Life when it made its decision, see Blankenship, 644 F.3d at 1354 (review of benefits denial is limited to consideration of the material available to the administrator at the time it made its decision), we can not say that Sun Life's denial of benefits was de novo wrong.

That we conclude that Sun Life's decision was not de novo wrong should end the inquiry under our multi-step framework. The district court also considered

7

the reasonableness of Sun Life's decision <u>as if</u> the decision was <u>de novo</u> wrong and still concluded the termination was due to be affirmed after considering all steps of the multi-step framework. In short, the district court concluded that Sun Life did not abuse its discretion; its decision was not arbitrary and capricious; and, after consideration of the entire record, termination was a reasonable determination.

Ray argues conflict of interest tainted Sun Life's decision: Sun Life made eligibility decisions and paid awarded benefits out of its own funds. But the district court -- notwithstanding Ray's protestations to the contrary -- did consider Sun Life's conflict as a factor in its assessment; it concluded that the conflict of interest -- considered in the light of the evidence of record -- did not cause Sun Life to abuse its discretion. It was Ray's burden, as the claimant, to show the decision was arbitrary; it was not Sun Life's burden to prove its decision was not tainted by self-interest. <u>See</u> <u>id</u>. at 1355. And even where a conflict exists, deference is owed to the plan administrator's discretionary decision-making. <u>Id</u>.

Even assuming the decision of Sun Life was <u>de novo</u> wrong (an assumption we do not accept), the administrative record shows a reasonable basis existed for Sun Life's benefit decision; and Sun Life's conflict of interest did not so taint its decision so as to render the decision arbitrary and capricious.

AFFIRMED.